**In re AM INTERNATIONAL, INC. SECURITIES LITIGATION.**

**E.D. DUBOWSKI, et al., Plaintiffs,**

v.

**Roy L. ASH, et al., Defendants.**

**Master File No. M–21–31. MDL No. 494.**

United States District Court, S.D. New York.

Nov. 20, 1985.

Berger & Montague, P.C., Saul, Ewing, Remick & Saul, Philadelphia, Pa., Greenfield & Chimicles, P.C., Bala Cynwyd, Pa., Milberg, Weiss, Bershad & Specthrie, Pomerantz Levy Haudek Block & Grossman, Wolf, Popper, Ross, Wolf & Jones, Arthur N. Abbey, Kass, Goodkind, Wechsler & Labaton, Abraham J. Brill, Pincus, Ohrenstein, Bizar, D'Allessandro & Solomon, Barr & Bello, New York City, Bader & Bader, White Plains, N.Y., Harvey Greenfield, Kaufman, Taylor & Kimmel, New York City, Gross & Sklar, P.C., Philadelphia, Pa., David B. Gold, San Francisco, Cal., for plaintiffs.

Donovan Leisure Newton & Irvine, Cahill Gordon & Reindel, New York City, for defendants.

## OPINION & ORDER

SPRIZZO, District Judge:

This action arises from the purchase by plaintiffs of stock in AM International, Inc. ("AMI"). Plaintiffs have sued AMI, various officers and directors of AMI, and Price Waterhouse, the company's independent auditor,[1] pursuant to sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5, 17 C.F.R. § 240.10b–5, alleging misrepresentations and omissions in AMI's fiscal 1979 and 1980 Annual Reports and Form 10–K's, and interim financial reports and Form 10–Q's for the first quarter of fiscal 1979 through the third quarter of fiscal 1981, all of which, allegedly, artificially inflated the market price of AMI stock. The plaintiffs originally filed a

---

1. The Court previously dismissed all claims against foreign affiliates of Price Waterhouse who had also been named as defendants. The Court also dismissed all claims against Price Waterhouse based upon the financial statements for fiscal 1979 and the unaudited interim financial statements for fiscal 1981. *See In re AM* *International, Inc. Securities Litigation,* 606 F.Supp. 600, 612 (S.D.N.Y.1985). The plaintiffs were given leave to replead with respect to the 1981 interim financials, and have done so. Therefore, all references to "the complaint" are to the Third Amended Consolidated Complaint.

number of separate actions, which were all transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407, and consolidated into one action, now referred to as the consolidated complaint action and captioned *Dubowski v. Ash.*

The plaintiffs in the consolidated action move for class certification pursuant to Fed.R.Civ.P. 23. The proposed class would include all persons who purchased AMI stock from September 17, 1979, when AMI published its year-end financial report for fiscal 1979, to September 23, 1981, when AMI disclosed its anticipated losses for fiscal 1981.[2]

In order to certify the action as a class action, the Court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of plaintiffs are typical; and (4) plaintiffs will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). The Court must also find that common questions of law or fact predominate over individual issues, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3).

Plaintiffs allege that the proposed class exceeds several thousand in number, *see* Complaint at ¶ 29, and defendants concede that the numerosity requirement of Rule 23(a)(1) is satisfied. Defendants contend, however, that common questions of law or fact do not predominate for the entire class period proposed by plaintiffs. They also argue that none of the class representatives proposed by plaintiffs would be a suitable representative.

1. *Predominance of common questions of law or fact—Rule 23(a)(2) and Rule 23(b)(3)*

Plaintiffs contend that there are common questions of law and fact which predominate over individual issues. Those common issues are alleged to be whether the particular financial statements challenged here were false or misleading due to the misrepresentation or omission of material facts and, if so, whether each defendant can be held liable to plaintiffs for those omissions or misrepresentations. Plaintiffs also argue that whether the price of AMI stock was artificially inflated by defendants' acts, and whether the class members sustained any damage due to defendants' acts, are also common questions of law and fact. *See* Affidavit of Stanley R. Wolfe (July 14, 1982).

Defendants do not dispute that common questions exist with respect to any claim regarding a purchase made before April 8, 1981.[3] However, they contend that the class period should not extend beyond that date because, on April 8, 1981, AMI issued a press release which, according to defendants, "eliminated subsequent claims and rendered continued reliance on prior financial statements and the integrity of the market price unreasonable." *See* Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Defendants' Memo") at 9.

The Court cannot accept as a matter of law, however, defendants' contention that the press release "cured the market", thereby requiring the Court to cut off the class period at that date. *See, e.g., Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 572

---

**2.** Plaintiffs originally sought to certify a class including those who purchased up to and including December 3, 1981, when AMI announced that its actual losses for fiscal 1981 were $250 million. The current complaint, however, ends the proposed class period on September 23, 1981.

**3.** Defendants had argued that the class period should not commence before September 16, 1980, because the complaint failed to state a claim with respect to the 1979 financials, and

the 1980 financials were not issued until September 16, 1980. The Court has already found that the allegations with respect to the 1979 financials do state a claim against the management and Audit Committee defendants. *See In re AM International, Inc. Securities Litigation, supra,* 606 F.Supp. at 611. Therefore, it is appropriate for the class period to commence on September 17, 1979, when the 1979 financials were disclosed to the public.

(2d Cir.), *cert. denied,* 459 U.S. 838, 908, 103 S.Ct. 86, 213, 74 L.Ed.2d 80 (1982). Indeed, there is language in the press release which could, in fact, have encouraged investment.[4] Moreover, the fact that the market price of AMI stock did not drop substantially until after the September 23, 1981 announcement of expected losses tends to undermine defendants' claim that the market was cured as of the date of the press release. Therefore, it seems clear that there are substantial and triable issues of fact with respect to defendants' contention which cannot be categorically resolved in defendants' favor so as to warrant a denial of plaintiffs' motion for class certification.

This circumstance clearly distinguishes this case from *In re LTV Securities Litigation,* 88 F.R.D. 134 (N.D.Texas 1980), relied upon by defendants, wherein the court ended the class period on the date that LTV requested the SEC to suspend trading in the company's securities for ten days and also issued a press release stating that inventory adjustments would have a

material adverse impact on the company. The press release relied upon by defendants in this case is not nearly so clear and unequivocal.

Therefore, the Court rejects defendants' contention that after the press release was issued, no purchaser of AMI stock could make a claim based on the misrepresentations and omissions alleged in the complaint, and concludes that common questions do predominate for the entire period of September 17, 1979 to September 23, 1981.[5]

### 2. *Typicality of claims and defenses— Rule 23(a)(3); and adequacy of representation—Rule 23(b)(4)*

Plaintiffs argue that the proposed class representatives are all typical class members because their claims arise from the same course of conduct by defendants and are based upon the same legal theory as those of the proposed class. *See, e.g., Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981). They also contend that each proposed rep-

---

4. The Press Release provided, in full, as follows:
   AM International
   NEW YORK, N.Y. (April 8)—Richard B. Black, recently elected Chairman of the Board and Chief executive Officer of AM International, Inc. has reported to the Company's Board of Directors on his findings after his first six weeks with the Company which were largely spent in an intensive investigation of the business operations and financial affairs of the Company. He stated that substantial losses are anticipated for the final six months of the Company's fiscal year which ends July 31. It is expected that otherwise positive operating results for such period may be substantially exceeded by charges to earnings which arise out of a financial review now being made.
   After consultation with the Company's outside auditors, Mr. Black recommended, and the Board approved, an immediate and extensive review of the Company's financial accounts and internal control systems by accounting personnel from both inside and outside the Company. Mr. Black advised that the financial review will directly focus on accounts receivable, inventories and reconciliation of intercompany accounts. The Company may be required to allocate some part of any charges to earnings to the 1st and 2nd quarters, which would increase the losses previ-

ously reported for such periods. The Company reported a loss of $8,950,000 in the first quarter and $6,939,000 in the second quarter. He also said that while it is not possible at this time to quantify the magnitude of the anticipated losses, the Company expects to be able to complete its review by mid-June, when results for the third quarter ending April 30 will be reported.
   Mr. Black stated, "This review is necessary to determine the current financial position of the Company. *At the same time new management is well on the way to implementing a series of steps intended to move AM toward profitability and restoring balance sheet strength. These steps focus management attention and resources on its basic businesses and the divestment program previously announced."* (emphasis added).
   The portions of the release emphasized clearly could be read to indicate that the overall forecast was for improvement in the Company's situation.

5. The Court can consider at some appropriate time in the future, if necessary, whether it should certify subclasses to deal with class members who purchased before or after the April 8 press release. *See, e.g., Green v. Wolf,* 406 F.2d 291, 299 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

resentative would fairly and adequately represent the class, because no plaintiff has interests antagonistic to those of the class, *see, e.g., Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975, and each is represented by qualified and experienced counsel. *See, e.g., Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968), *vacated and remanded on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Defendants dispute the typicality of a number of the proposed representatives on the ground that there are unique defenses which can be asserted against them which could unnecessarily prejudice the class. *See, e.g., Kline v. Wolf,* 88 F.R.D. 696, 698–99 (S.D.N.Y.1981), *aff'd in part, rev'd in part on other grounds,* 702 F.2d 400 (2d Cir.1983); *Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y.1978). They also contend that all plaintiffs would fail to adequately represent the class due to a conflict of interest or other disqualification.[6]

### a. *Purchases made outside class period*

The Court agrees with defendants that purchasers who bought their stock after the disclosure of September 23, 1981, and therefore outside the class period, are subject to unique defenses, and therefore cannot satisfy the typicality requirement. *See, e.g., Greenspan, supra,* 78 F.R.D. at 132; *cf. Kraus v. Paterson Parchment Paper Co.,* 65 F.R.D. 368, 369 (S.D.N.Y.1974). It follows that plaintiffs Robert G. Morris and Mari Kay Morris, as Trustees for the Robert G. Morris D.D.S., Inc. Pension Plan and Trust, and Marcus Weisman and Robert Hyman, all of whom purchased their stock after September 23, 1981, may not act as class representatives.

Defendants also challenge those who purchased AMI stock after the issuance of the April 8, 1981 press release, but before the September 23, 1981 disclosure of

projected losses. Because the Court has held that this period is appropriately encompassed within the class period, it rejects defendants' contention that anyone who purchased during that period is subject to a unique defense disqualifying him as a class representative.

### b. *Unique defenses regarding reliance*

Defendants contend that a number of plaintiffs did not, in fact, purchase in reliance on the challenged financial statements or the integrity of the market price, and therefore must be rejected as class representatives.

■ The Second Circuit has noted that, in general, the fact that individualized questions of reliance may exist is not sufficient to defeat class certification, as separate trials can be held on that particular issue. *See, e.g., Korn v. Franchard Corp.,* 456 F.2d 1206, 1212 (2d Cir.1972); *Green, supra,* 406 F.2d at 301; *see also Abrams v. Johns-Manville Corp.,* [1981–82 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,348 at 92,158 (S.D.N.Y. Nov. 10, 1981); *Herbst v. International Telephone and Telegraphic Corp.,* 65 F.R.D. 13, 19 (D.Conn.1973), *aff'd,* 495 F.2d 1308 (2d Cir.1974); *Feder v. Harrington,* 52 F.R.D. 178, 183 (S.D.N.Y. 1970). Moreover, in cases where plaintiffs allege omissions or fraud on the market, proof of direct reliance is not required, but is presumed where materiality is shown. *See, e.g., Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741; *reh'g denied,* 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692; 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); *Panzirer v. Wolf,* 663 F.2d 365, 367–68 (2d Cir.1981), *vacated and remanded on other grounds,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 553 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Blackie v. Barrack,* 524 F.2d 891, 906–07 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct.

---

**6.** Defendants do not challenge the fact that all plaintiffs are represented by qualified and experienced counsel. The Court finds that all coun-

sel, and particularly the co-lead counsel, are very well-qualified to handle this litigation.

57, 50 L.Ed.2d 75 (1976); *Competitive Associates, Inc. v. Laventhol,* 516 F.2d 811, 814 (2d Cir.1975). However, a proposed class representative who clearly did not rely upon either the allegedly misleading financials or on the integrity of market price or information is subject to unique defenses, and therefore may not represent the class.

The cases cited by defendants illustrate this point. In *Greenspan, supra,* the proposed class representatives purchased after the disclosure of adverse news, and in reliance only upon the recommendation of their brother, a professional investor who apparently had not relied on market integrity but rather on his "generalized faith" in such investments. *See* 78 F.R.D. at 132 & n. 6. In *Markewich v. Ersek,* 98 F.R.D. 9, 10–11 (S.D.N.Y.1982), plaintiff's purchase was apparently based on the recommendation of his broker, who was privy to inside information and misled by misrepresentations other than those in the challenged financial statements. *See id.* In *State Teachers Retirement Board v. Fluor Corp.,* 500 F.Supp. 278, 285 (S.D.N.Y.1980), *aff'd in part, rev'd in part on other grounds,* 654 F.2d 843 (2d Cir.1981), plaintiff's stock transaction occurred before the alleged misstatement could have influenced plaintiff's purchase, and therefore plaintiff could not have relied upon that statement.

However, none of the proposed class representatives is in a situation analogous to those of the plaintiffs in the above cited cases.[7] Notwithstanding the defendants' selective citation to the deposition testimony of various putative class action plaintiffs, this Court's consideration of that testimony in its entirety demonstrates that each such plaintiff clearly relied upon the AMI financials and/or the integrity of the market. The fact that a purchaser may have also considered a number of other factors in making his decision to purchase does not render him subject to a unique defense, so long as he substantially or significantly relied upon either the challenged statements or the integrity of the market. *See, e.g., Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 92 (2d Cir. 1981); *Herzfeld v. Laventhol,* 540 F.2d 27, 34 (2d Cir.1976); *Abrams, supra,* [1981–82 Transfer Binder] Fed.Sec.L.Rep. at 92,157; *see also Panzirer, supra,* 663 F.2d at 367.

Therefore, the Court rejects defendants' argument that plaintiff Mitchell did not rely upon either the AMI financial statements or the integrity of the market price, but only upon the fact that she believed the new management under defendant Richard Black would improve the company. Ms. Mitchell testified at her deposition that, in addition to her belief that the new officers could turn the company around, she believed the stock price was a good one because it was below book value, and that her purchase of AMI stock would be a good long-term investment. She stated that she began to follow the price of AMI stock in early 1981, that before her purchase she spoke with her broker regarding AMI, that she requested and read in its entirety the 1980 Annual Report, checked the stock in Standard & Poor's Guide, and may have read other publications which contained information regarding AMI. Taken in this context, the Court certainly cannot find that Mitchell did not rely upon the financial reports or upon the integrity of the market.

c. *Unique defenses going to credibility*

It is well-established that a proposed class representative may be rejected on the ground that his credibility is subject to attack due to inconsistencies or contradictions in his testimony. *See, e.g., Panzirer, supra,* 663 F.2d at 368; *Kline, supra,* 88 F.R.D. at 699–700. However, defendants

7. Based on the affidavit of Carol Pollock that her husband, plaintiff Robert Pollock, made all decisions regarding their joint investment in AMI, defendants contend that she would not be a proper class representative, citing *Greenspan, supra,* 78 F.R.D. at 132. However, the fact that an investor relied on the integrity of the market indirectly through a third party does not defeat her fraud claim. *See, e.g., Panzirer, supra,* 663 F.2d at 368; *Competitive Associates, supra,* 516 F.2d at 814. Therefore, the Court will certify her subject to any future finding that Robert Pollock did not rely on the integrity of the market or the financials.

have failed to demonstrate that any putative class action plaintiff should be disqualified on that ground.

### d. *Sale of stock during class period*

Defendants challenge the certification as class representative of any plaintiff who, during the class period, sold AMI stock while the price of the stock was still allegedly inflated. Defendants claim that these plaintiffs arguably benefited from the alleged fraud and are therefore in a different position from those who sold only after the fraud was disclosed and the class period ended.

■ However, the mere fact that a plaintiff sold stock during the class period does not in itself disqualify him from acting as class representative. *See, e.g., Koenig v. Smith,* 88 F.R.D. 604, 609 (E.D.N.Y.1980); *In re LTV, supra,* 88 F.R.D. at 148–49, 152; *Greene v. Emersons, Ltd.,* 86 F.R.D. 47, 61–62 (S.D.N.Y.1980); *Tucker v. Arthur Andersen & Co.,* 67 F.R.D. 468, 481–82 (S.D.N.Y.1975); *Handwerger v. Ginsberg,* [1974–75] Fed.Sec.L.Rep. (CCH) ¶ 94,-934 at 97,240 n. 3 (S.D.N.Y. Jan. 2, 1975). Rather, the determination of when a plaintiff sold his stock essentially relates to the issue of damages. It is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit. *See, e.g., Blackie, supra,* 524 F.2d at 909; *see also Koenig, supra,* 88 F.R.D. at 609; *In re LTV, supra,* 88 F.R.D. at 148–49, 152; *Greene, supra,* 86 F.R.D. at 61–62.[8]

**8.** Once again, if appropriate, the Court may later decide to use subclasses if it appears there may be some conflict of interest between those who sold during the class period and those who did not. *See, e.g., Blackie, supra,* 524 F.2d at 909; *Koenig, supra,* 88 F.R.D. at 609; *Greene, supra,* 86 F.R.D. at 62; *Tucker, supra,* 67 F.R.D. at 482.

**9.** Defendants allege that certain plaintiffs sold AMI shares for a profit during the class period, and that therefore they are not typical class members.

*Kraus v. Paterson Parchment Paper Co.,* 65 F.R.D. 368 (S.D.N.Y.1974), cited by defendants, does not mandate a contrary result. In *Kraus,* the court held that one who purchased *before* the class period and sold during the class period could not represent those who both purchased and sold during the class period. *See id.* at 369.[9]

### e. *Inadequacy due to unfamiliarity with this action*

Defendants challenge a number of plaintiffs on the ground that they are unfamiliar with this lawsuit, and have simply relied upon their attorneys' ability to investigate and prosecute their claims.

In *Greenspan, supra,* the Court refused to name as class representatives plaintiffs who demonstrated "alarming unfamiliarity with the suit" and placed "undue emphasis" on the ability of counsel to prosecute the action. *See* 78 F.R.D. at 133–34. Plaintiffs in *Greenspan* had not met with their attorneys until after the basic groundwork for the suit had been laid, could not identify virtually any of the defendants, were not aware of certain elements of their complaint, and had limited personal knowledge of the underlying facts. *See id.* The *Greenspan* court described their role(s) in the litigation as "superfluous," *id.,* and noted the unacceptability of having a class representative who gives his attorney "'unfettered discretion.'" *Id.* at 133 (quoting *In re Goldchip Funding Co.,* 61 F.R.D. 592 (M.D.Pa.1974)).

■ None of the proposed class representatives suffers from such total lack of interest and unfamiliarity with this suit. Moreover, in complex litigations such as

It is unclear if any plaintiff realized an overall profit on his AMI transactions. If this were the case, the Court could see no basis for allowing that plaintiff to represent a class of purchasers, who allegedly suffered a loss due to their purchase, to sue. If, in fact, the Court later determines that any plaintiff falls within this category, the Court can take appropriate action at that time. However, the Court disagrees with defendants' contention that any plaintiff who sold some shares for a profit during the class period, but suffered an overall loss, is an inadequate representative.

securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the expertise of counsel is to be expected. *See, e.g., Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372–74, 86 S.Ct. 845, 850–51, 15 L.Ed.2d 807, *reh'g denied*, 384 U.S. 915, 86 S.Ct. 1333, 16 L.Ed.2d 367 (1966); *Dura-Bilt, supra*, 89 F.R.D. at 102–03; *Abrams, supra*, [1981–82 Transfer Binder] Fed.Sec.L. Rep. at 92,158–59.

### f. *Failure to comply with discovery requests*

■ A class representative is a fiduciary to the class, and his failure to comply with the requirements of discovery bears upon whether he will adequately fulfill his fiduciary obligations. *See, e.g., Kline, supra*, 88 F.R.D. at 700; *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y.1976).

Defendants contend that a number of proposed class representatives have refused to comply with proper discovery requests, and therefore should not be permitted to represent the class. However, the Court finds that these alleged failures are not of the type which should mandate disqualification. In *Kline*, the plaintiff refused, on the advice of counsel, to answer proper deposition questions relevant to the subject matter of the lawsuit. *See* 88 F.R.D. at 700. In *Norman*, the court noted numerous objections to the proposed class representative, including the fact that he failed to answer deposition questions responsively and directly, had "not been candid" regarding certain subjects, and, along with counsel, had engaged in "a great deal of unnecessary obfuscation, delay and argument, over the form of questions, and whether questions were within the scope of permissible discovery." *See* 72 F.R.D. at 506.

None of the plaintiffs in the instant case can be charged with such glaring violations of the discovery rules. For example, the fact that a plaintiff produced most requested documents at his deposition and the rest, discovered later, within a week of that deposition, clearly does not render the plaintiff an inadequate representative. Similarly, the objections of counsel for plaintiff Dubowski, made at Dubowski's deposition with respect to questions regarding counsel's representation of Mr. Dubowski in another class action, (even assuming arguendo that they were not well-founded) and counsel's instruction to Mr. Dubowski not to answer those questions, are not sufficient to disqualify Mr. Dubowski as a class action representative.

### g. *Alleged conflicts of interest of plaintiffs William and Daniel Kass*

Defendants contend that plaintiffs William Kass and Daniel Kass, who are brothers and who sue as trustees of a trust of which their mother is beneficiary, would be inadequate class representatives because William Kass is a partner in the law firm of Kass, Goodkind, Wechsler & Labaton, which is representing them in this action.

The conflict of interest presented by these facts is obvious. Although William Kass stated at his deposition that he will not participate in any fee awarded to his firm in connection with this litigation, he clearly has interests in the firm which could conflict with those of the class. *See, e.g., Brick v. CPC International, Inc.*, 547 F.2d 185, 186 (2d Cir.1976); *Susman v. Lincoln American Corp.*, 561 F.2d 86, 94–95 (7th Cir.1977); *Cotchett v. Avis Rent a Car System, Inc.*, 56 F.R.D. 549, 554 (S.D.N.Y.1972). As William's brother, Daniel is also in a position of potential conflict. *See, e.g., Turoff v. May Co.*, 531 F.2d 1357, 1360 (6th Cir.1976); *Stull v. Pool*, 63 F.R.D. 702, 704 (S.D.N.Y.1974).

While some courts have adopted a per se rule prohibiting a plaintiff from being named class representative in similar situations, *see, e.g., Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 (5th Cir.1978); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1087 (3d Cir.), *cert. denied sub nom. Arthur Andersen & Co. v. Kramer*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976), the Second Circuit has not adopted a per se rule. *See Brick, supra*, 547 F.2d at

186–87. Therefore, the issue is one within this Court's discretion. The Court is aware that plaintiffs with similar potential conflicts of interest have been certified as class representatives. *See, e.g., Sweet v. Bermingham,* 65 F.R.D. 551, 554 (S.D.N.Y. 1975); *Stull v. Baker,* [1973 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,227, at 94,-929 (S.D.N.Y. July 23, 1973); *cf. Wellman v. Dickinson,* 79 F.R.D. 341, 346–47 (S.D. N.Y.1978) (associate of law firm). However, the Court is inclined to exercise its discretion not to certify these plaintiffs as class representatives, especially since there are other plaintiffs before the Court without this potential conflict who can be named as class representatives. *See, e.g., Brick, supra,* 547 F.2d at 187.

### h. *Standing of Robert Blakeney*

Plaintiff Robert Blakeney purchased AMI stock in June of 1981 as custodian for his daughter Lori Blakeney pursuant to the Uniform Gift to Minors Act. In February of 1983, Lori Blakeney became 21 years old, and title to the stock passed to her. Robert Blakeney sues here as custodian for Lori.

Defendants contend that because Robert Blakeney is no longer Lori's custodian, he lacks standing to sue on her behalf. Plaintiffs argue that because Robert made the purchase, he is the one who was defrauded by defendants and therefore should be permitted to sue.

■ The parties have cited absolutely no authority for their respective positions. However, the Court need not reach the merits of the controversy. The fact that this has already become an issue before the

Court indicates that Robert Blakeney could be subject to a unique defense which might prejudice the interests of the class. *See, e.g., Kline, supra,* 88 F.R.D. at 700. Therefore, given the presence of other plaintiffs who are able to act as class representatives, the Court will exercise its discretion to not certify plaintiff Robert Blakeney as class representative.[10]

### 3. *Superiority of Class Action—Rule 23(b)(3)*

Fed.R.Civ.P. 23(b)(3) requires that the Court find a class action to be superior to other available methods for the fair and efficient adjudication of this controversy. The courts have recognized that securities fraud actions involving numerous plaintiffs are particularly well-suited to the class action device. *See, e.g., Green, supra,* 406 F.2d at 297–98, 301; *Dura-Bilt, supra,* 89 F.R.D. at 103,; *Abrams, supra,* [1981–82 Transfer Binder] Fed.Sec.L.Rep. at 92, 159; *Handwerger, supra,* [1974–75 Transfer Binder] Fed.Sec.L.Rep. at 97,240 n. 2, 97,241. Indeed, defendants do not contend that this is not an appropriate suit for using the class action procedure.[11] Therefore, the Court finds that a class action is the superior method for litigating this controversy.

### CONCLUSION

■ The Court grants plaintiffs' motion for certification of this action as a class action. The class shall encompass all those who purchased AMI stock from September 17, 1979 until and including September 23, 1981. Plaintiffs E.D. Dubowski, Frederick Rand, Robert Pollack, Carol Pollack, Meta

---

10. A class representative must be willing to bear the costs of the class action should the suit prove to be unsuccessful. *See, e.g., Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 177–79, 94 S.Ct. at 2152–53 (1974). Despite defendants' assertion to the contrary, however, none of the proposed representatives have indicated that they are unwilling to bear the costs of this action if necessary.

11. Defendants contend that the Court actually has before it multiple motions to certify the same class in each of the individual actions

originally filed, because these actions have been consolidated for pre-trial purposes only. However, the plaintiffs have chosen to consolidate their complaints into one action and to pursue that one action as a class action. The Court finds this to be a reasonable and efficient method of pursuing these claims, and sees no reason why certifying a class under these circumstances would be inappropriate, assuming that the other requirements of Rule 23 are met. *See, e.g., In re Plumbing Fixture Cases,* 298 F.Supp. 484, 496 (JPML 1965).

Morrison, Herman Kahan, Herbert Silverberg, David Francis, Marie Mitchell, James Pettit and George Wike are named as class representatives.

Counsel for plaintiffs shall serve on defendants and submit, pursuant to Fed.R. Civ.P. 23(c)(2), a proposed form of notice to the class on or before November 30, 1985. Defendants shall file any objections to the proposed notice on or before December 31, 1985.

It is SO ORDERED.