**In re IGI SECURITIES LITIGATION.**

**Civ. A. No. 87–3635(SSB).**

United States District Court,
D. New Jersey.

July 21, 1988.

Gary E. Cantor, Berger & Montague, P.C., Daniel E. Bacine, Barrack, Rodos & Bacine, Philadelphia, Pa., Norman Berman, Berman, DeValerio & Pease, Boston, Mass., Peter Masnik, Kalikman & Masnik, Haddonfield, N.J., for plaintiffs.

John P. Hauch, Jr., Archer & Greiner, Haddonfield, N.J., for defendants.

ORDER

BROTMAN, District Judge.

This matter having come before the court on a motion by plaintiffs to certify this as a class action, to certify the plaintiffs as class representatives, to establish the class period, and to certify pendent state claims; and the court having considered the moving papers, opposition, oral arguments and relevant authority; and for good cause shown; and

The court having considered the Report and Recommendation of Joel B. Rosen, United States Magistrate, filed June 30, 1988, and any objection thereto, and having reviewed the record in this case, and finding that the Report and Recommendation should be adopted as the findings of this court and that the relief recommended therein should be granted;

IT IS on this 20th day of July, 1988, hereby

ORDERED that the motion shall be GRANTED in part and DENIED in part, for the reasons set forth in the Magistrate's Report and Recommendation entered on June 30, 1988; and it is

FURTHER ORDERED that the parties shall submit to the court for approval on September 8, 1988 a proposed form of notice to be sent to the members of the plaintiff class.

LETTER REPORT AND RECOMMENDATION

June 30, 1988

JOEL B. ROSEN, United States Magistrate.

Presently before the court is a motion by plaintiffs Jerry Aronberg, Gary Schlosser and Scott Goodman for an order certifying this matter as a class action pursuant to Rule 23, Fed.R.Civ.P., establishing the class period, and certifying pendent state claims. This motion is being determined on a report and recommendation basis pursuant to 28 U.S.C. § 636(b)(1)(B) because of the potentially dispositive nature of the plaintiffs' request. For the reasons which follow, I respectfully recommend that

plaintiffs' motion be granted in part and denied in part.

The named plaintiffs purchased common stock of IGI, Inc. (hereinafter "IGI") during the proposed Class Period of August 10, 1987 through September 11, 1987. They allege that they purchased their shares in reliance on a series of fraudulent and misleading statements released to the press by the defendants, officers of IGI, which artificially inflated the market price of the company's stock through the Class Period.

Plaintiffs based their claims on a fraud-on-the-market theory, asserting that they and as many as thousands of other IGI investors suffered substantial damages as the result of defendants' conduct. They allege violations of sections 10(b) and 20(a), Securities Exchange Act of 1934; Rule 10b–5, Securities Exchange Commission Rules; and the common law of negligent misrepresentation.

The plaintiffs assert that they have satisfied, as they must, the four requirements of Rule 23(a), Fed.R.Civ.P. They further assert that this action is maintainable as a class action pursuant to Rule 23(b)(3) of the Federal Rules. Defendants do not dispute plaintiffs' 23(a)(1) and (2) claims (numerosity and commonality), but they vigorously oppose plaintiffs' 23(a)(3) and (4) claims (respectively, typicality and adequacy of representation) and their 23(b)(3) claim (common questions predominate and a class action is the superior method of adjudication).

## HISTORY OF THE CASE

IGI, a New Jersey company which manufactures and markets animal health care products for use in biomedicine, entered the human pharmaceutical market in early 1987 with the announcement that a majority-owned subsidiary had developed a technology for encapsulating human pharmaceuticals. This technology employed liposomes, microscopic particles which "[t]he medical and pharmaceutical industries believe ... may be designed to gradually release drugs directly into the blood stream in a more sustained and efficient manner and with fewer complications than through ... conventional drug delivery systems." Plaintiffs' Memorandum of Law, p. 3.

The gravamen of plaintiffs' complaint is that between August 10, 1987 and September 11, 1987 the defendants, primarily through Edward B. Hager, the company's president, released a series of announcements to the press which deliberately and fraudulently overstated the status of the liposome development and IGI's plans to market the technology.[1] As a result of these releases, plaintiffs contend, the price of IGI stock rose dramatically during the proposed Class Period from approximately $4.00 per share on August 10 to $32.00 per share on September 11, 1987. On the latter date, plaintiffs further assert, the stock price suddenly plummeted to $17.50 per share when news reached the marketplace that the status of IGI's liposome development was less certain than had been announced publicly in the August 10–September 11 releases and that optimism about the technology might be unjustified.

Specifically, there were five releases during the proposed class period which plaintiffs allege fraudulently misled the investing public and deceived the market.[2] First, on August 10, 1987, the defendants announced that IGI and Coopers Animal Health, Ltd., a British company, had agreed to develop liposome capsules for certain pharmaceuticals. Second, on August 12, 1987, IGI announced a similar agreement with Rorer Group, Inc., another major drug company. Third, on September 3, 1987, defendants publicized a product development and licensing agreement with Berlex Labs, Inc., a subsidiary of a major German company. In the fourth allegedly misleading statement, made on an unspecified date shortly after the Berlex announcement, defendant John P. Gallo, an IGI official, publicly expressed considera-

---

**1.** Plaintiffs' Memorandum of Law also refers to an earlier series of releases which it alleges "prime[d] the market to anticipate announcements" about the liposomes. Plaintiffs' Memorandum of Law, at 5.

**2.** These releases are described in detail in Plaintiffs' Memorandum of Law, at 5–8.

ble optimism about the liposome technology. Finally, on or about September 9, 1987, defendants announced an agreement with Pfizer, Inc. for liposome technology development. As a result of these announcements, it is alleged, the plaintiffs and thousands of other investors were misled into unwarranted confidence in IGI's future productivity and earnings. They further allege that following the September 11, 1987 news which "cured" the misrepresentations made by the defendants, the precipitous decline in the price of IGI stock caused plaintiffs to suffer considerable financial losses.

## THE NAMED PLAINTIFFS

Jerry Aronberg, a businessman from Maple Shade, New Jersey, purchased his IGI stock upon recommendation of his broker at E.F. Hutton. Plaintiffs say that the broker's review of the press releases and his awareness of the rise in IGI's stock price led him to believe that IGI was a good investment. Mr. Aronberg bought 1500 shares on September 10, 1987.

Gary Schlosser, a banker from Voorhees, New Jersey, dealt with the same broker who advised Mr. Aronberg and, on the same recommendation, he purchased 150 shares on September 11, 1987.

Scott Goodman, an insurance broker from Lawrence, New York, also relied on a broker's recommendation to buy the IGI stock. On September 8, 1987, he bought 10,000 shares, 5,000 for his own investment and 5,000 for the Defined Benefit Plan of Builders, Contractors, Developers Ltd.

## DISCUSSION OF LAW

### I.  Rule 23(a)

Plaintiffs must, in order to conduct their suit as a class action, satisfy the four requirements of Rule 23(a), Fed.R.Civ.P., which provides for certification where

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Defendants do not dispute that plaintiffs' application satisfies the Rule 23(a)(1) and (2) requirements of numerosity and commonality. Defendants' Memorandum of Law at 15. Hence, this Report excludes discussion of the requirements of Rule 23(a)(1) and (2) and proceeds directly to an analysis of the 23(a)(3) and (4) requirements.

### A.  Rule 23(a)(3):  Typicality

■ Defendants vigorously argue that plaintiffs' claims are not typical of those of the proposed class. The essence of their objection is that the named plaintiffs, Aronberg, Schlosser and Goodman, had different levels of investing expertise, they relied on different kinds of information in making their investment decisions, and the variations in their claims would require the defendants to raise unique defenses and proofs. This, say the defendants, renders the three named plaintiffs' claims potentially atypical of class members' claims and, therefore, unsuitable for class certification. I respectfully suggest that the defendants' argument fails, for the following reasons, and I find that plaintiffs meet the requirement of Rule 23(a)(3).

*In re Data Access Systems Securities Litigation,* 103 F.R.D. 130 (D.N.J.1984), Your Honor set forth a four-point analysis of reliance in a fraud-on-the-market case. *Data Access Systems,* 103 F.R.D. at 139 *et seq.*[3] This analysis is readily applied to the case at bar.

---

**3.** Defendants insist that, because plaintiffs have asserted a fraud-on-the-market theory, the motion for class certification cannot be decided without analyzing the entire stock market during the proposed class period, Defendant's Memorandum at 8, but this court should reject that proposition for two reasons. First, as Your Honor has stated, typicality for the purposes of class certification does not require the determination of the applicability of the fraud-on-the-market theory. *Data Access Systems,* 103 F.R.D. at 139. Second, an analysis of the entire stock market would constitute an inquiry into the merits of the plaintiffs' case and, as is well-established by now throughout this and other federal courts, "[a] court may not consider the merits of the plaintiffs' case in determining the certification motion," *Data Access Systems,* 103

First, Your Honor said, "a plaintiff's claim is typical of the class if it arises from the 'same event or course of conduct which in turn had given rise to the claims of other class members'", *Data Access Systems*, 103 F.R.D. at 139 (*quoting Leist v. Tamco Enterprises, Inc.*, 1982 Fed.Sec. L.Rep. ¶ 98,633 (S.D.N.Y.)). Defendants' objection to plaintiffs' claim of typicality focuses on the potential distinctions between the claims of Aronberg, Schlosser and Goodman, on the one hand, and, on the other, claims of plaintiffs who "actually relied on ... research experts or on other sources," Defendants' Memorandum of Law at 17 (*quoting Seiler v. E.F. Hutton*, 102 F.R.D. 880, 890 (D.N.J.1984)). But the defendants' attention is misplaced. "The focus of the typicality inquiry in a case such as this is not plaintiff's behavior, but defendants'." *In re Electro–Catheter Securities Litigation*, 1987 Fed.Sec.L.Rep. ¶ 93,643 at ¶ 97,981 (D.N.J.). Put another way, it is *defendants'* course of conduct, in this case the release to the press of the allegedly fraudulent and misleading statements, upon which the court must focus in determining typicality. Since the plaintiffs allege that these press releases led to financial losses among all named plaintiffs and class members, and since "defendants did not take any actions that are unique to these named plaintiffs," *Data Access Systems*, 103 F.R.D. at 139, the plaintiffs have satisfied the Rule 23(a)(3) typicality requirement.[4]

Second, Your Honor also disposes of defendants' argument that different types of reliance defeat a class certification motion. "[D]iffering types of reliance are present in almost every securities class ac-

tion." *Data Access Systems*, 103 F.R.D. at 139. *See also Finkel, et al. v. O'Brien, et al.*, where Judge Barry states, "[I]t is typical, rather than atypical, for shareholders to rely on various sources of information ... in making investment decisions," *Finkel, et al. v. O'Brien, et al.*, No. 85–2539, slip op. at 8 (D.N.J. May 23, 1986) (*citing Data Access Systems*, 103 F.R.D. at 139).

This court has recently reasserted this reliance doctrine, in a case in which the defendants opposing class certification argued that differences among the types of data relied on by investors was fatal to class certification. In his recent opinion in *In re Western Union Securities Litigation*, Chief Judge Gerry reminded the litigants that if differing types of reliance "were enough to defeat class action certification on typicality grounds there could never be a class action for securities purchasers." *In re Western Union Securities Litigation*, 120 F.R.D. 629, 634 (D.N.J. 1988) (*citing Data Access Systems*, 103 F.R.D. at 139). Judge Gerry concluded, as I do on strikingly similar facts,

> What plaintiffs appear to allege, then, is that certain statements, uniformly available to the plaintiff class, were either relied on by the plaintiffs, or affected the market price of [the] common stock which was then itself relied on by the plaintiffs when they purchased ... shares. This indicates to us that the claims of [the plaintiffs and the class] are typical, all arising out of the same set of alleged misrepresentations.

*Western Union* at 634.

The third step of the *Data Access Systems* analysis directs us to the issue of

---

F.R.D. at 137, (*quoting Eisen v. Carlisle*, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–2153, 40 L.Ed. 2d 732 (1974). *See also Finkel, et al. v. O'Brien, et al.*, No. 85–2539, slip op. at 9 (D.N.J. May 23, 1986) [1986 WL 15569].

**4.** Defendants suggest that because plaintiffs relied on different types of investment advice, defendants will have to raise unique defenses as to particular plaintiffs' claims, and this rules out plaintiffs' typicality claim, Defendants' Memorandum of Law, at 18, 20. I reject this. First of all, the issue of reliance goes to the merits of plaintiffs' claim, *Data Access Systems*, 103 F.R. D. at 139, and the court cannot inquire into the

merits in determining class certification, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974). Second, where "defendants can point to no defense which is clearly dispositive or particular to one small group of plaintiffs ... denial of certification is not required as a matter of law where defendants have particular defenses to offer against certain of the plaintiffs." *In Re Electro–Catheter Securities Litigation*, 1987 Fed. Sec.L.Rep. ¶ 96,643 at ¶ 97,932 (D.N.J.) (*citing Zenith Laboratories v. Carter–Wallace*, 530 F.2d 508 (3d Cir.1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976)).

proof of non-reliance. Even should defendants be able to prove non-reliance by plaintiffs, this proof will be made at trial, not on a motion for class certification. *Data Access Systems*, 103 F.R.D. at 139 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).

Finally, it seems well-settled in this circuit that defendants' non-reliance argument fails even if the defendants are correct that there are degrees of individual reliance exhibited by members of the class. "[W]hether individual reliance will be a necessary element of plaintiffs' claim or whether plaintiffs will be able to travel on the presumptive reliance of the fraud-on-the-market theory is itself a question that is common to and typical of the entire class." *Finkel, et al. v. O'Brien, et al.*, slip op. at 9 (*citing Data Access Systems*, 103 F.R.D. at 140).

### B. *Rule 23(a)(4): Adequacy of Representation*

To determine adequacy of representation under Rule 23(a)(4), the courts in this circuit apply a two-pronged test to assess (1) whether the named plaintiffs' interests are in any way antagonistic to class members' interests and (2) if the plaintiffs' attorney has the qualifications to conduct the litigation. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed. 2d 679 (1975); *see also Data Access Systems*, 103 F.R.D. at 140. Defendants do not dispute the qualifications of plaintiffs' attorneys. They do, however, assert that plaintiffs have interests potentially antagonistic to those of the class they would represent. In support, defendants offer a melange of arguments, some aimed at the named plaintiffs as a group, some aimed at Mr. Goodman in particular. Most of the arguments are unavailing; however, the defendants raise some questions which lead me to conclude that the motion as it relates particularly to the certification of Mr. Goodman as a class representative should

be granted in part and denied in part. My reasons follow.

In asserting the plaintiffs' inadequacy under Rule 23(a)(4), the defendants first raise essentially the same objections which they raised in their effort to dispute the plaintiffs' typicality under Rule 23(a)(3).[5] That is, they assert that because the named plaintiffs may have relied in differing degrees on different types of investment advice prior to purchasing IGI stock, and because they could be subject to different defenses from those which defendants would raise to other class members' complaints, the named plaintiffs' interests are antagonistic to the class they wish to represent.

Having explained what I believe are the flaws in defendants' reliance analysis as they would apply it against typicality, and seeing little more than the same offered against adequacy of representation, I will not repeat what I have already said. Defendants offer nothing additional which convinces me that the objectives of the named plaintiffs are rendered antagonistic to the objectives of other investors by virtue of different kinds or degrees of reliance.

Defendants also raise specific objections to the inclusion of Mr. Goodman as a named plaintiff. They suggest that, first, because Goodman realized some profit from the sale of a portion of his IGI stock and, second, because he purchased some of the shares on behalf of the Defined Benefit Plan of Builders, Contractors, Developers, Ltd. ("the Plan"), his interests in the litigation defeat the 23(a)(4) prerequisites. While the first argument is unavailing, the second leads me to conclude that Mr. Goodman's participation as a representative must be partially foreclosed at this time. I will examine each argument in turn.

First, defendants assert that Goodman's profit on IGI stock disqualifies him. The plaintiffs cite *In re A.M. Internation-*

---

**5.** In fact, defendants present their opposition to 23(a)(3) and (4) certification in a single segment of their Memorandum, entitled "Plaintiffs Are Not Typical Representatives of a Fraud-on-the- Market Theory of Liability: Rule 23(a)(3) and (4)." Defendants' Memorandum of Law at i; *see also* Defendants' Memorandum of Law at 16–22.

*al Securities Litigation,* 108 F.R.D. 190 (S.D.N.Y.1985) for the proposition that a plaintiff who profits by sale of the stock purchased in reliance on fraudulent misrepresentations can serve as a class representative so long as he has suffered an overall loss. Plaintiffs' Reply Memorandum at 4, n. 1. This may be an overgenerous reading of *A.M. International,* since that court did not actually determine whether the plaintiffs' transactions in the disputed stock resulted in an overall gain or loss but rather discussed only whether the sale *per se* of the disputed stock would disqualify class membership. Nonetheless, the case is instructive, since the District Court for the Southern District of New York said,

> [T]he mere fact that a plaintiff sold stock during the class period does not in itself disqualify him from acting as a class representative. (Citations omitted.) Rather, the determination of when a plaintiff sold his stock essentially relates to the issue of damages. It is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit. (Citations omitted.)

*AM International,* 108 F.R.D. at 196.

The mere assertion, then, that Goodman made a profit from the sale of IGI shares which are not the subject of this lawsuit does not create such a conflict. Goodman claims that he was motivated by defendants' misstatements to purchase shares of IGI stock and that he incurred substantial losses as a result. This is the heart of the lawsuit and does not disqualify Goodman.

I reject, too, defendants' contention that the result in *DeSimone v. Industrial Bio-Test Laboratories, Inc.,* 80 F.R.D. 112 (S.D.N.Y.1978) disqualifies Goodman, since *DeSimone* was decided on facts markedly different from those at bar. *DeSimone* involved a class certification application by a plaintiff who held options on stock purchased from a company which had made false and misleading statements about its securities. The record before the court was unclear on crucial elements of plaintiff's case, such as when the individual movant's options expired or whether he sold or retained them or whether he had gained or lost on his transactions. The court found that a proposed class representative "whose substantial interests are not necessarily or even probably the same as those whom [he is] deemed to represent, does not afford the protection to absent parties which due process requires." *DeSimone,* 80 F.R.D. at 113 (citations omitted).

*DeSimone* is readily distinguishable from the case before me. Said the court,

> [T]his is not a case involving a number of purchases made in reliance on a limited number of allegedly false and misleading statements. Hence, members of the proposed class would have no interest in establishing the falsity of statements made by the defendants after the expiration date of their options.

*DeSimone,* 80 F.R.D. at 113.

Mr. Goodman is, on the other hand, precisely the kind of plaintiff anticipated by the *DeSimone* court: he, with Schlosser and Aronberg, purchased in reliance on five statements made over a four-week period, and he has a keen interest in establishing, on his own and others' behalf, his claim that the statements were fraudulent and misleading.

■ Finally, I reach the troubling question of Mr. Goodman's relationship to the Plan. The defendants raise two related objections to Goodman's certification based on this relationship. First, they suggest that Goodman cannot represent the class because he *may* have violated a fiduciary duty by investing the Plan's funds in the stock. Defendants' Memorandum of Law at 21. Defendants offer nothing on which to rest this suggestion, and I would certainly not disqualify Goodman on the strength of innuendo or speculation. The defendants do cite a case in which a court disqualified an employee pension plan trustee. Defendants' Memorandum of Law at 21, n. 5. But the facts of the case are so starkly different from those before us that they do

not warrant discussion.[6]

The defendants also seem to argue that Goodman's purchase on behalf of the Plan disqualifies him *per se* from representing the class. I can find no support for this contention, and certainly it seems clear that, had Goodman purchased shares of the Plan at one time and shares for himself at another, he could represent the class at least in his capacity as an individual investor, without regard to other, separate purchases of the stock he might have made. But the picture drawn here is not clear. I am concerned about the ambiguities in the record as it regards Goodman's September 8 purchase and about the Plan's relationship to the litigation. I recommend, therefore, that Goodman be certified under 23(a)(4) as a class representative *in his capacity as an individual purchaser* on September 8 of 5000 shares for his own portfolio, but I recommend that plaintiffs' motion to certify Goodman as a representative in his capacity as a purchaser for the Plan be denied, without prejudice, for the reasons which follow.

The plaintiffs insist that the law permits a pension plan trustee to act as a class representative, and they cite *Landy v. Amsterdam*, 96 F.R.D. 19 (E.D.Pa.1982) in support. *Landy* is, however, not quite as on point as plaintiffs would have us think. What the court held in *Landy* was not that a trustee could represent a class, but that a solvent pension plan could *itself* act as class representative along with a trustee, where the trustee promised to finance the litigation himself and could demonstrate his ability to do so and where all the participants in the plan agreed to the arrangement. *Landy v. Amsterdam*, 96 F.R.D. at 20, 21.

As it stands now, the record in the instant case paints a picture cloudy at best. We are told that Goodman bought 10,000 shares on September 8; that 5000 of those

shares were purchased for his portfolio, 5000 for the Plan; that he incurred substantial losses on the September 8 transaction. The ambiguities are rife, and plaintiffs have a distance to go before they have satisfied the *Landy* criteria. Did the Plan suffer losses on its IGI investment? Does the Plan wish to participate in the litigation? Will the Plan, as *Landy* appears to mandate, seek certification along with Goodman as a class representative? Do all members of the Plan agree to the arrangement? Can Goodman finance the Plan's participation in the litigation?

Without more, Goodman's participation on the basis of his purchase for the Plan cannot be certified at this time and the motion should be denied in part. This denial should be ordered, of course, without prejudice to the plaintiffs' right to reapply for certification on the basis of Goodman's purchase of the Plan shares if Goodman satisfies the *Landy* criteria, including but not limited to the submission of an affidavit stating that he agrees to personally assume the costs of the litigation, that he has the resources to do so, and that all the Plan members agree that the Plan will act as a class representative.

In the same vein, my recommendation that Goodman's participation be permitted based only on his personal purchase of 5000 shares and the losses incurred thereon is made without prejudice to the defendants' right to petition the court at any time during the litigation to alter or amend the class certification order, as permitted by Rule 23(c)(1), Fed.R.Civ.P., should it appear that Goodman's personal 5000–share purchase on September 8 does not, in fact, qualify him.

## II. 23(b)(3)

In addition to qualifying under Rule 23(a), a party must satisfy one of the provisions of Rule 23(b). In this case, plaintiffs

---

**6.** Defendants cite *Norman v. Arcs Equities*, 72 F.R.D. 502 (S.D.N.Y.1976) as a case in which a pension fund was disqualified as a class representative. It would be more correct to say that the class representation was denied because the court viewed the fund merely as an alter ego for the trustee; because the plaintiff trustee was

motivated at least in part by personal *animus* against the defendant which might intrude on his ability to represent the class; and because the plaintiff had obfuscated and delayed discovery and could not therefore be relied on to adequately represent the class. *Norman v. Arcs Equities*, 72 F.R.D. at 504, 506.

assert that they satisfy the condition of subdivision (3) of Rule 23(b), which states that a class action is maintainable where

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### A. *Predominance*

■ The common question on which the plaintiffs assert they meet the 23(b)(3) criteria is whether the defendants' press releases fraudulently misrepresented the status of IGI's liposome technology and caused the plaintiffs to rely to their detriment. The only individual questions are the amount of damages each plaintiff might recover.

The defendants dispute that the plaintiffs satisfy the requirement. Because, they assert, there were five separate statements released to the media and because different plaintiffs presumably relied on different statements among the five, individual questions of reliance predominate over common ones. The defendants also say that other information available to the investing public, had the plaintiffs made themselves aware of it, would have corrected any misimpressions created by the press releases. Finally, the defendants say that the plaintiffs who failed to avail themselves of published curative information were reckless and not entitled to class certification.

I reject defendants' arguments for a number of reasons. First, consideration of their contentions regarding the plaintiffs' alleged recklessness would require a factual inquiry of the sort that is neither required nor permitted in ruling on a class certification motion. *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130 (D.N.J.1984) (*quoting Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). These contentions go to the heart of the defenses which the defendants may raise and which could, if proven, defeat the plaintiffs' claims; they

are not appropriate for determination of the class motion.

Second, individual issues such as the actual extent of reliance or the amount of damages arise in most, if not all, class actions. But where, as in this case, "[a]ll class members are united in their desire to establish the defendants' complicity and liability," the individual issues are secondary and the class should be certified. *Data Access Systems,* 103 F.R.D. at 142.

Defendants' argument is similar to that raised in opposition to class certification in *Re Electro–Catheter Securities Litigation,* 1987 Fed.Sec.L.Rep. ¶ 93,643 (D.N.J.). In that case, Judge Sarokin rejected the notion that the materiality of each allegedly fraudulent document had to be considered at the motion stage. "[T]he general theory of [plaintiff's] case is much simpler than the number of misstatements reflects," Judge Sarokin stated, and "the materiality of the various alleged misrepresentations ... is not relevant at this time." *Electro–Catheter Securities* at ¶ 97,933 (*quoting Dura Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87 (S.D.N.Y. 1981)).

Finally, I remind the defendants that it is well-settled in this circuit that class actions are important devices for securities fraud cases and are a favored means of resolving issues similar to those at bar.

> "The nature of the securities laws is complex and litigation therein concerned expensive. Without the class action device, many actionable wrongs would go uncorrected and persons affected thereby unrecompensed." Accordingly, the Third Circuit has held that "the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing the class action."

*Data Access Systems,* 103 F.R.D. at 137 (*quoting Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.1970)).

### B. *Superiority of Method*

■ The defendants assert that a class action suit is not the best method for adjudicating this controversy because the

amount lost by the three named plaintiffs, approximately $75,000, is sufficiently large to justify separate actions against the defendants. Defendants' Memorandum of Law at 33. The plaintiffs contend, on the other hand, that having the right to sue individually does not require them to do so. Further, and more importantly, they assert that a class action is especially suited to a securities fraud litigation which involves a potentially very large and widely dispersed number of plaintiffs. Plaintiffs' Memorandum of Law at 19–20.

I find that a class action is a superior method and appropriate here, given the potentially large number of plaintiffs, the likelihood that they are widely dispersed and given my finding that common questions predominate. I note that the defendants have not suggested that there is not a potentially large class of plaintiffs or that this class suit will be hard to manage. Nor do they address the concern expressed by Your Honor in *Data Access Systems* that a class action should be certified to avoid taxing the courts with a barrage of lawsuits adjudicating the same issues and involving the same defendants, *Data Access Systems*, 103 F.R.D. at 142.[7]

### III. Pendent State Claims

■ Defendants oppose the certification of the plaintiffs' state law claim of negligent misrepresentation on the grounds that the named plaintiffs did not read the allegedly false and misleading releases but relied instead on investment advice from brokers. I have found that the defendants' individual reliance argument does not overcome class certification in the context of the federal securities law claims. Because the state law claims present the court with essentially the same considerations presented by the federal securities law claims, I recommend that the pendent state claims should be certified, for the following reasons.

Your Honor, *In re ORFA Securities Litigation*, 654 F.Supp. 1449 (D.N.J.1987) analyzed the relationship between questions of individual reliance and Rule 23 requirements, as they affect the certification of pendent common law claims of negligent misrepresentation in a securities fraud case. In that case, which raised issues virtually identical to the motion before us, Your Honor concluded that it was appropriate for the court to assume pendent jurisdiction over the state law claims, even where, as in the instant case, defendants argued that variances in individual reliance rendered class certification improper. As Your Honor said,

> [Q]uestions of actual reliance do not render class treatment of the pendent claims unworkable. There is a limited factual basis for the claims of fraud and misrepresentation in this case. The core elements of the tort of fraud: material misrepresentation, knowledge of falsity, and intent, must be argued on the basis of the identical facts for all the members of the class. Considering the total lack of personal contact between the defendants and class members, the actual reliance argument will not be amenable to significant variation among class members. This court simply does not see actual reliance as an issue requiring such a level of individualized attention that class certification is inappropriate.

*ORFA Securities*, 654 F.Supp. at 1461.

I draw the same conclusion in this case. I would also remind the defendants that the objectives of judicial economy, convenience and fairness to all the litigants compel a ruling at this stage that pendent jurisdiction is appropriate, 13B Wright, Miller & Cooper, *Federal Practice and Proce-*

---

7. Defendants suggest that, since six months passed between the time of the alleged fraud and the time plaintiffs filed their suit, and since no other IGI investors have filed suits, the court should conclude that no other investors wish to sue. Defendants' Memorandum of Law at 33–34. I remind defendants that the plaintiffs have not yet notified other investors, including perhaps many whose individual investments and/or losses may have been small enough to discourage individual lawsuits but who may well wish to join the class litigation. Nor should I have to remind the defendants that they earlier chose not to dispute the plaintiffs' claims of numerosity, Defendants' Memorandum of Law at 15, and therefore they should not raise the issue in the context of Rule 23(b)(3).

*dure* § 3567.1 at 123 (*citing United Mine Workers v. Gibbs*, 383 U.S. 715 at 726, 86 S.Ct. 1130 at 1139, 16 L.Ed.2d 218 (1966)). Finally, the defendants are surely aware that the trial court may at any time separate the state and federal claims should an evidentiary inquiry at a later stage in the litigation demonstrate that "state issues substantially predominate." 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3567.1 at 138 and cases cited therein.

## IV. Proposed Class Period

██ The plaintiffs ask the court to certify the period from August 10, 1987 through September 11, 1987 as the Class Period. The period began, plaintiffs contend, with the release on August 10 of the first of five allegedly fraudulently misleading statements regarding the development of IGI's liposome technology by major multi-national pharmaceutical companies; it continued as the remainder of those statements was released and the price of IGI stock continued its dramatic rise; and it ended when news reached the marketplace on September 11 that IGI's optimism about the technology had been exaggerated.

The defendants, on the other hand, argue that the class period should be limited to September 8 through September 11, 1987, the time in which the named plaintiffs purchased their stock. They reason that Goodman, Schlosser and Aronberg purchased while the stock prices were at an all-time high, whereas other potential class members presumably purchased in August when prices were considerably lower. Therefore, they conclude, August buyers must have been subject to such vastly different market influences and have objectives so different from those of September 8–11 buyers that the two groups together are not properly a class.

I reject defendants' analysis. To limit the period as they suggest would be tantamount to finding that the five statements which together form the basis of the com-

plaint were not part of a unified scheme to manipulate the stock; or that the dramatic rise in the price of IGI stock during the September dates was not related to the press releases; or that variances among individual plaintiffs' reliance on one release or another, or on one day's trading index or another, is the dispositive element; or that the September 11 indications that IGI had overstated the status of the technology did not lead to the dramatic fall in the price of stock. These are conclusions the court neither can nor should reach at this stage of the litigation, upon a motion for class certification.

The gravamen of the complaint is that the defendants' false releases to the media misled investors, who first purchased at artificially inflated prices and later suffered losses when the misinformation was cured and the price of IGI stock plummeted. Whether those five statements, taken as a whole, *did* fraudulently influence the market is a question for the trier of fact. The only test we need apply now is "whether the facts which underlie the gravamen of the plaintiff's complaint ... represent a reasonable basis on which an individual purchaser or the market *would* rely," *Data Access Systems*, 103 F.R.D. at 143 (emphasis added).[8] I conclude that the facts in this case do represent such a reasonable basis and that the proposed dates are appropriate for certification. I remind defendants again, too, that "the court can redefine the class period if further discovery suggests that the certified period is too long or too short," *Data Access Systems*, 103 F.R.D. at 143 (*quoting LTV Securities Litigation*, 88 F.R.D. 134, 147 (N.D.Tex.1980)).

## NOTICE TO THE PLAINTIFF CLASS

Rule 23 requires that the court deciding in favor of a class action certification "shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). Since it ap-

---

**8.** Your Honor applied this test in *Data Access Systems* to determine where to terminate a class period, but the standard appears readily applicable to the question of where this class period should commence.

pears that no such notice has been given, I recommend that all parties, through counsel be directed to, agree on a form of notice to members of the class and submit this for approval when they appear before me on September 8, 1988 for a status conference as set down in Pretrial Order No. 2, ¶ 5, which I entered on April 28, 1988.

CONCLUSION

For these reasons, I respectfully REC-OMMEND that plaintiffs' motion for class certification be GRANTED in part and DE-NIED in part with the denial based on Mr. Goodman's representation of the class based on the 5000 shares he purchased for the pension plan.

I shall file the original of this Report and Recommendation with the Clerk and mail copies to the plaintiffs' counsel and the defendants' counsel, as listed below. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 40.D.5, General Rules of the United States District Court of New Jersey, any party may file and serve written objections to this Report and Recommendation within ten days after being served with it.

Upon the expiration of that ten-day period, if no objections are filed and served, I recommend that Your Honor enter the accompanying Order.