Fred **WERNER** and Paul Oberkircher, as Trustee of the Radiology Medical Associates Money Purchase Pension Trust, Plaintiffs,

v.

**SATTERLEE, STEPHENS, BURKE & BURKE,** as Successor to Satterlee & Stephens, Defendant.

No. 89 Civ. 5130 (CSH).

United States District Court, S.D. New York.

July 28, 1992.

---

Lowey Dannenberg Bemporad & Selinger, P.C., New York City, for plaintiffs (Neil L. Selinger, of counsel).

Kutak Rock, New York City, for defendant (Joseph A. Ingrisano,[1] Robert L. Magielnicki, and Lindsey Miller–Lerman, of counsel).

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This federal securities action arises out of the failure of the Matthews & Wright Group, Inc. ("M & W"), an underwriter of tax exempt housing bonds, and plaintiffs' attempts to recover money invested in M & W.

Several related actions have been brought in this District, including the Securities and Exchange Commission ("S.E.C.") investigation of M & W. *See S.E.C. v.*

---

1. By Notice of Motion dated May 8, 1992 defendant moved for the admission *pro hac vice* of Joseph A. Ingrisano, Esq. The Court grants the motion.

*Matthews & Wright Group, Inc.*, No. 89 Civ. 2877 (RJW).

This case is before the Court on several motions. Defendant Satterlee Stephens Burke & Burke ("Satterlee Stephens") has moved to dismiss on the grounds that the action is barred by the statute of limitations, that the complaint does not plead fraud with particularity, and that the complaint fails to state a claim. Plaintiffs have cross-moved for summary judgment on Satterlee Stephens' statute of limitations defense. The Court consolidated this case with *In re Matthews & Wright Group, Inc. Securities Litigation*, 87 Civ. 4672 (CSH) (*"In re Matthews & Wright"*) and defendant opposes such consolidation. Plaintiffs move for class certification.

For the reasons set forth below, defendant's motion to dismiss is denied and plaintiff's motion for summary judgment is granted. The motion opposing consolidation is denied and the class is certified.

## BACKGROUND

M & W, a Delaware corporation which had its principal place of business in New York, New York, was a holding company which, through its subsidiaries, provided investment and underwriting services, principally in connection with the issuance, sale and trading of municipal securities in both primary and secondary markets. M & W represented in an August 14, 1986 prospectus that it was the 15th largest underwriting firm in the United States in new municipal bond issues and the fourth largest firm in housing bond underwritings, principally to finance multi-family housing. Complaint ¶ 19.

Plaintiff Fred Werner, a resident of New York, purchased 4,000 shares of the common stock of M & W during the class period. Plaintiff Paul Oberkircher is trustee of Radiology Medical Associates Money Purchase Pension Trust, a Pennsylvania pension trust, which purchased 4,000 shares of the common stock of M & W during the class period. Plaintiffs bring this action (i) individually and on behalf of purchasers of M & W common stock between August 14, 1986 through June 26,

1987 pursuant to Rules 23(a) and (b), Fed. R.Civ.P.; and (ii) as assignees under a Settlement Agreement dated January 5, 1989 (the "Settlement Agreement") of the claims of M & W and its wholly-owned subsidiary, M & W Capital, Inc. ("M & W Capital") arising out of and based upon the professional legal counsel rendered by Satterlee Stephens. Complaint ¶¶ 10–11, 13.

Satterlee Stephens is a New York law partnership which is the successor to the partnership known as Satterlee & Stephens. Plaintiffs allege Bernard A. Althoff was the Satterlee Stephens partner responsible for providing legal services to M & W; that Satterlee Stephens acted as general corporate counsel to M & W and participated in sham bond closings in December 1985 and a public offering of M & W stock on August 14, 1986; and that Satterlee Stephens assisted M & W in preparing the registration statement and prospectus for the offering which omitted material information. Complaint ¶¶ 16(a)–(c)–17, 79–92.

The gravamen of plaintiffs' complaint is that securities fraud was committed in connection with the registration and sale to the public of 1.5 million shares of M & W common stock issued in August 14, 1986 (the "Offering") and the sale of M & W common stock on the open market from August 14, 1986 through June 26, 1987 (the "Class Period"). Complaint ¶¶ 5, 78(a)–(o).

Plaintiffs allege that the Offering concealed from the public that M & W's growth was based on a fraudulent scheme in connection with the issuance and sale of approximately $2 billion of municipal bonds. Plaintiffs allege that M & W conducted at least 25 closings in December 1985 and August 1986 in which bonds were to be purchased and held in escrow by M & W. In fact, no consideration ever changed hands at these closings. Once the 1986 Tax Reform Act became effective, the bonds were sold as tax-exempt with no disclosure of their original issuance. The bonds were sold as being for housing projects but the proceeds were in fact used to purchase guaranteed investment contracts ("GIC"). Plaintiff alleges that the

bonds were issued without a reasonable expectation that the housing projects would be built. All of these factors meant that it was likely the Internal Revenue Service would deem the bonds taxable securities, which is what has occurred with respect to $380 million of these bonds. Complaint ¶¶ 6, 22–72.

When this information became public the market price of M & W stock, which had been offered at $11 per share and which traded at more than $13 per share during the Class Period, plummeted. As of January 1989, the stock was trading between $.25 to $.50 per share. Complaint ¶¶ 7, 73–76.

After the revelation of the wrongdoing, M & W abandoned the underwriting of municipal bonds. M & W and two of its principals have agreed to the revocation of their licenses as registered broker-dealers as a result of the S.E.C.'s civil suit against M & W, three of its principals, and its legal counsel, Bernard A. Althoff, a partner in Satterlee Stephens. *See S.E.C. v. Matthews & Wright Group, Inc., supra.* A third principal of M & W pled guilty to criminal charges in the Territory of Guam, where M & W underwrote housing bonds in 1985. *See United States v. Goldberg,* (C.D.Calif. July 11, 1989). Two attorneys involved in the issuance of M & W bonds have also pled guilty to criminal charges. *See United States v. Strauss,* (D.Guam January 14, 1988); *United States v. Newman,* (E.D.Mo. April 12, 1988). Complaint ¶¶ 8–9, 77.

Plaintiffs bring this action as a class action pursuant to Fed.R.Civ.P. 23(a) and (b) on behalf of themselves and all others who purchased M & W shares during the Class Period pursuant to a registration statement dated August 14, 1986. Plaintiffs allege that because the purchasers are so numerous a class action is the best method of proceeding in this case. A class identical to the class in this case was certified by this Court in *In re Matthews & Wright* on consent of the defendants therein. Complaint ¶ 21.

Count I of the complaint alleges that Satterlee Stephens violated § 10(b) of the Securities and Exchange Act and Rule 10b–5 promulgated thereunder by engaging in a conspiracy and course of business which operated as a fraud on plaintiffs. Plaintiffs allege that Satterlee Stephens made untrue statements of material fact and omitted to state material facts which were required to make statements not misleading. Plaintiffs allege that the purpose of this scheme was to bring about the public offering of M & W common stock, to conceal material adverse information about M & W, and to induce investors to purchase stock at an inflated price. Complaint ¶¶ 93–100.

Counts II and II assert claims for common law fraud and negligent misrepresentation. Count IV asserts claims for negligence and malpractice. Complaint ¶¶ 101–20. Plaintiffs seek an award of damages suffered, including punitive and exemplary damages, and interest. Plaintiffs also seek the costs of this action, including attorneys' fees.

Satterlee Stephens has moved to dismiss on the grounds that the action is barred by the statute of limitations, that the complaint does not plead fraud with particularity and that the complaint fails to state a claim. Plaintiffs have cross-moved for summary judgment on Satterlee Stephens' statute of limitations defense. The Court consolidated this case with *In re Matthews & Wright,* 87 Civ. 4672 (CSH) and defendant opposes such consolidation. Plaintiffs move for class certification.

## DISCUSSION

As the cross-motions on the statute of limitations question present an issue that could be dispositive, these motions will be taken up first. I will then take up the other grounds for dismissal raised in Satterlee Stephens' motion to dismiss. After considering those motions, I will turn to the issues of consolidation and class certification.

### I. Statute of Limitations

The statute of limitations to be applied in federal securities cases has undergone recent judicial and legislative transformation.

Previously, the Second Circuit rule was that actions alleging fraudulent violations of the federal securities laws brought in the district courts sitting in New York State were governed by the New York statute of limitations for actions based on common law fraud, including the New York borrowing statute. *See Armstrong v. McAlpin*, 699 F.2d 79, 86–87 (2d Cir. 1983); *Stull v. Bayard*, 561 F.2d 429, 431 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978); *Arneil v. Ramsey*, 550 F.2d 774, 779–81 (2d Cir. 1977).

In 1988, the Third Circuit decided *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3rd Cir.) (*in banc*), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), which held that "the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *Id.* at 1550.

The Second Circuit adopted the *Data Access* rule in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990). *See also Levin v. NL Industries, Inc.*, 926 F.2d 199, 201 (2d Cir.1991).

In *Lampf, Plava, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321, *reh'g denied*, —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991), decided on June 20, 1991, the Supreme Court approved those one year/three year limitation periods and applied them retroactively, so as to bar a federal securities claim which was timely when brought under then existing law.

Following considerable public comment, Congress overruled *Lampf* by enacting section 476 of the Comprehensive Deposit Insurance Reform and Taxpayer Protection Act of 1991 (new section 27A of the Securities Exchange Act of 1934, to be codified at 15 U.S.C. § 78aa–1), P.L. 102–242, 105 Stat. 2236, signed into law on December 19, 1991. Section 27A(a) provides that the limitation period for a § 10(b) private civil action "that was commenced on before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, *including principles of retroactivity*, as such laws existed on June 19, 1991." (emphasis added). June 19, 1991 is the day before the Supreme Court decided *Lampf.*

In *Henley v. Slone*, 961 F.2d 23 (2d Cir. 1992), the Second Circuit reasoned that the italicized phrase in the statute required the district courts to consider, on a case-by-case basis, whether the one-year/three-year rule of *Ceres* should be applied retroactively. In resolving that issue, district courts in the Second Circuit are instructed by *Henley* to consider the principles declared in *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.1991) "*Welch I*"), vacated and remanded *sub nom. Northwest Savings Bank v. Welch*, —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). In *Henley*, the Second Circuit said that "if it would be inequitable under *Welch I* to apply *Ceres Partners*" to a given case, "then the more generous limitations period of prior state law applies." 961 F.2d at 26. The Second Circuit remanded *Henley* to the district court for a determination of that issue. I must make that determination in the case at bar.

In *Welch I*, the Second Circuit applied the three-part test of nonretroactivity set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). A general presumption favors application of the law prevailing at the time of appeal. *Chevron* instructs the courts to consider three factors in deciding whether a particular ruling qualifies for purely prospective application, contrary to that presumption. The first factor, that the new rule of law must overrule established precedent, is clearly met by *Ceres*. *See Welch I*, 923 F.2d at 994. Once the first factor is satisfied, the court should " 'weigh' in each case whether retroactive application would conflict with the purposes of the rule and whether it would produce inequitable results." *Id.* at 993 (quoting *Chevron* 404 U.S. at 106–07, 92 S.Ct. at 355) (footnote omitted). *Welch I* also holds that the second *Chevron* factor is satisfied: "The purposes of the '34 Act will not be impaired by continuation of a handful of lawsuits filed

within the longer time limits of previously applicable state law." *Id.* at 995.

■ The third *Chevron* factor is whether it would be inequitable to apply *Ceres* retroactively. Retroactive application of new statutes of limitations implicates equity if the effect would be to bar a claim that was timely when filed. Absent that effect, no equitable concern arises.

The circumstances of the case at bar are these. The purported plaintiff class purchased common shares of M & W during the period August 14, 1986 through June 26, 1987. Plaintiffs allege that the prospectus and registration statement relating to the public offering of the shares were fraudulent.

The complaint alleges at ¶ 21(a) that June 26, 1987 is "the date immediately prior to the publication of news articles which first revealed information relating to investigations by the SEC and IRS, of bond issues underwritten by the Company ..." Those news articles were not attached to or further identified in the complaint. Deposition testimony of plaintiffs include references to several newspaper accounts suggesting that one municipal bond issue or another underwritten by M & W might be questionable. Those press reports made no reference to Satterlee Stephens or indeed to any attorneys.

Those negative press reports prompted plaintiffs at bar to join with other plaintiffs in filing a complaint on June 30, 1987 in this Court against M & W, its directors, and Donaldson Lufkin and Jenrette ("DLJ"), the underwriters of M & W's common stock. *International Apparel Assoc. v. Matthews & Wright Group, Inc.*, 87 Civ. 4672 (CSH). As the litigation metastasized, on December 3, 1987 those plaintiffs filed an amended complaint containing expanded allegations against the same defendants. *See In re Matthews & Wright*, 87 Civ. 4672, 87 Civ. 5650 and 87 Civ. 6013 (CSH).

On January 15, 1988, a trade publication, the *Bond Buyer*, published an article describing a plea of guilty offered by a bond lawyer, Edward K. Strauss, to a criminal charge in the United States District Court for the District of Guam. Strauss, a Pittsburgh lawyer, had served as bond counsel in respect of a number of issues sold by M & W. The *Bond Buyer* article contained prominent reference to "Bernard Althoff, a partner in the New York law firm of Satterlee & Stephens and a major Matthews & Wright shareholder." Strauss was said to have reported his suspicions of fraud to Althoff and to the chairman of M & W.

So far as the extensive record developed during discovery reveals, this is the first public reference to possible wrongdoing by anyone at Satterlee Stephens. The only prior reference to Satterlee Stephens was in the prospectus and registration statement themselves, which identified the firm as bond counsel to M & W and set forth certain opinions with respect to the common shares of the company.

On April 27, 1989, the SEC filed a civil enforcement against Althoff among others for participation in M & W's fraudulent conduct.

On July 27, 1989 plaintiffs filed this action against Satterlee Stephens.

Retroactive application of *Ceres* to Werner (a New York resident) or *Data Access* to Oberkircher (a Pennsylvania resident) would not bar the claims of these plaintiffs. The three-year period of repose does not bar the claim; that elapsed not earlier than August 14, 1989, three years after the initial offering. Plaintiffs filed suit in July 1989. The issue then is the one-year period from plaintiffs' discovery of defendants' fraud. That means actual discovery, not when plaintiffs might have discovered it by the exercise of due diligence.

Certainly that is the way the Third Circuit articulated the rule in *Data Access*, which the Second Circuit adopted in *Ceres*. As the Third Circuit subsequently pointed out in *Gruber v. Price Waterhouse*, 911 F.2d 960, 964 n. 4 (3rd Cir.1990), *Data Access* "relied upon the Securities Exchange Act of 1934 which does not provide for inquiry notice." So too in *Ceres*, Judge Kearse's opinion for the Second Circuit looks to §§ 9 and 18(a) of the 1934 Act as source material for the uniform federal

limitations periods in securities cases. 918 F.2d at 362. §§ 9(e) and 18(c) both speak in terms of "one year after the discovery of the facts constituting the violation." In *Lampf* the Supreme Court performed the same analysis. *See* — U.S. at —, 111 S.Ct. at 2779–81.

*Lampf* explicitly rejects the equitable tolling doctrine triggered by the victim's ignorance of fraud:

> Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1–and–3–year structure.
>
> The 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3–year limit is a period of repose inconsistent with tolling. One commentator explains: "[T]he inclusion of the three-year period can have no significance in this context other than to impose an outside limit." Bloomenthal, The Statute of Limitations and Rule 10b–5 Claims: A Study in Judicial Lassitude, 60 U.Colo.L.Rev. 235, 288 (1989). See also ABA Committee on Federal Regulation of Securities, Report of the Task Force on Statute of Limitations for Implied Actions 645, 655 (1986) (advancing "the inescapable conclusion that Congress did not intend equitable tolling to apply in actions under the securities laws"). Because the purpose of the 3–year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

— U.S. —, 111 S.Ct. at 2782.

■ I am therefore respectfully puzzled by Judge Newman's statement in *Henley*, 961 F.2d at 24, that *Ceres* "announced a uniform limitations period of the earlier of one year from the date the fraud was *or reasonably should have been discovered* or three years from the date of the transaction." (emphasis added). I understand the one-year period to run from a plaintiff's actual discovery of fraud, whether or not he should have discovered it earlier. That construction does not permit fraud claims to endure forever; they all are subject to the three-year statute of repose.

In the case at bar, I think it clear that plaintiffs did not actually discover fraud involving Satterlee Stephens until April 27, 1989, when at the end of its investigation the SEC filed a civil enforcement action against Althoff and others. The January 1988 *Bond Buyer* article will not do. That focused upon the conduct of another bond lawyer from another city. While the article referred to ongoing investigations by the United States Attorney for this district and the SEC, the target of the former inquiry was identified as Matthews & Wright, and the article predicted the SEC would file a law suit "in the coming weeks" against individuals other than Althoff. In point of fact, the SEC included Althoff in its action filed in April 1989; but the *Bond Buyer* article did not give plaintiffs actual knowledge (as opposed to inquiry notice) of fraud involving Satterlee Stephens.

■ On this analysis, the one year/three year rule of *Ceres* and *Data Access* would not bar plaintiffs' action, since they filed the complaint within three months after the SEC commenced its action naming Althoff. There is therefore no basis not to apply that rule retroactively to the case at bar. Furthermore, under the rule plaintiffs' suit is timely and they are entitled to dismissal of defendant's statute of limitations defense.

If application of the one year/three year rule operated to bar plaintiffs' claims, I would refuse to apply it retroactively because of the equitable considerations discussed in *Welch I*, 923 F.2d at 995, under closely analogous circumstances. Accordingly state law would apply. Werner is a New York resident. The New York statute of limitations for common law fraud is six years from commission of the fraud or two years from its discovery, actual or imputed, whichever is longer. *See Triangle Underwriters v. Honeywell, Inc.*, 604 F.2d 737, 746 n. 17 (2d Cir.1979). On Werner's claim, this federal district court looks to the law of New York as the forum state to determine to determine the limitations, and to federal law for guidance as to the appropriate equitable tolling principle. *Welch I*, 923 F.2d at 993. Under federal common

law, the statute of limitations begins to run "when the plaintiff has actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Stull v. Bayard,* 561 F.2d at 432. In consequence, where the plaintiff resides in New York, "the federal plaintiff, like a State plaintiff, must sue within six years from the time the cause of action accrued or within two years from the time the wrongdoing was, or with reasonable diligence, should have been, discovered." *Armstrong v. McAlpin,* 699 F.2d at 87.

Werner's suit is timely under these principles. The issue is "when plaintiffs learned facts sufficient in law to put them on notice of the existence of the alleged fraud." *Arneil,* 550 F.2d at 780–81. A victim of fraud must exercise due diligence to investigate once he has "a reasonable basis to suspect" fraudulent conduct on the part of the defendant. *Griffin v. McNiff,* 744 F.Supp. 1237, 1256 (S.D.N.Y.1990). "[C]onstructive knowledge of the probability of fraud" may be imputed from such a circumstance as the receipt of an IRS report rejecting tax deductibility, *Zola v. Gordon,* 685 F.Supp. 354, 370 (S.D.N.Y. 1988), or wherever a plaintiff has "clear knowledge" of a claim for fraud against the defendant, *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1416 (9th Cir.1987).

In the case at bar, Satterlee Stephens was identified as counsel to Matthews & Wright in the prospectus and the registration statement. The firm gave an opinion with respect to the issuance of common stock. The first negative press reports concerning particular bond issues appeared in late June 1987. No reference was made to the conduct of attorneys at that time. These particular circumstances are insufficient in law to put plaintiffs on notice of possible fraudulent conduct by Althoff or anyone connected with Satterlee Stephens. Accepting *arguendo* that the *Bond Buyer* article in January 1988, with its several references to Althoff, gave plaintiffs inquiry notice of the firm's complicity in fraud, plaintiff's suit was timely commenced less than two years later.

Oberkircher is a Pennsylvania resident. Although his account was brokered in California, Oberkircher's cause of action accrued in Pennsylvania, "where the loss resulting from the misrepresentation was sustained." *Industrial Consultants, Inc. v. H. S. Equities,* 646 F.2d 746, 747 (2d Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *see Stafford v. International Harvester Co.,* 668 F.2d 142 (2d Cir.1981); *Arneil,* 550 F.2d at 779–80; *Sack v. Low,* 478 F.2d 360, 366–67 (2d Cir.1973). "Where the harm claimed is economic, the loss is sustained where the economic impact of the defendant's conduct is felt, usually but not invariably at the plaintiff's residence." *Appel v. Kidder, Peabody & Co., Inc.,* 628 F.Supp. 153, 156 (S.D.N.Y.1986) (Weinfeld, J.)

The Pennsylvania common law fraud statute of limitations applicable to federal securities claims under prior law is two years. *See Gruber,* 911 F.2d at 966 n. 9. As noted, federal common law determines when that state statute starts to run; and under the applicable equitable tolling principle, that did not occur until January 1988, at the earliest, for the reasons stated with respect to Werner's claim. Accordingly Oberkircher's claim, asserted less than two years later, was timely.

It follows that, whatever the basis of analysis, defendant's statute of limitations defense is insufficient as a matter of law.

Defendant contends that if this Court decides that plaintiffs' suit is timely, the *Henley* decision mandates that this Court consider the constitutionality of § 27A. Satterlee Stephens argues that § 27A violates the separation of powers.

While I have determined that plaintiffs' suit is timely, I do not reach that result by virtue of § 27A. Accordingly, I do not reach its constitutionality.

## II. Motion to Dismiss

Satterlee Stephens moves to dismiss Counts I (Rule 10b–5) and II (fraud) of the complaint as failing to comply with Rule 9(b) because plaintiffs do not allege whether Satterlee Stephens directly participated in fraud or whether Satterlee Stephens aid-

ed and abetted fraud. Defendant argues that if plaintiffs are alleging that Satterlee Stephens directly participated in fraud, they have not alleged the dates of the purchases or sales of securities, the dates of alleged misrepresentations or omissions, the materiality of those misrepresentations or omissions and facts giving rise to an inference of intent. Defendant contends that if plaintiffs are alleging that Satterlee Stephens aided and abetted fraud, then they have failed to allege a securities law violation, knowledge by defendant and assistance by defendant in achieving the violation. Satterlee Stephens Memorandum of Law In Support of Motion to Dismiss ("Def.Mem.") at 17–29.

Satterlee Stephens argues that if the federal securities law claims are dismissed, the common law claims should be dismissed for lack of pendent jurisdiction. In the alternative, defendant argues that the negligent misrepresentation claim should be dismissed for failure to state a claim. Defendant contends that lawyers owe no duty to third parties in performing their services. Defendant argues that the plaintiffs lack standing to bring the legal malpractice claims in Count IV because the settlement agreement assigning those rights to plaintiffs has not been approved by the Court. If the complaint is not dismissed, defendant asks that plaintiffs be required to file a more definite statement and to plead compliance with the statute of limitations applicable to the malpractice claim. Def.Mem. 30–43.

Plaintiffs respond that defendant is accused of both committing and aiding and abetting violations of the securities laws. Plaintiffs contend that the complaint adequately alleges a violation of the securities laws by defendant. Plaintiffs argue that they have alleged misrepresentations by M & W, Complaint ¶¶ 44–45, 48, 51 and 57, and that Satterlee Stephens either recklessly or knowingly failed to disclose this information. Complaint ¶¶ 15–17, 60–72, 78–92, 95–97. Plaintiffs also argue that they have adequately alleged a primary violation by M & W and aiding and abetting by Satterlee Stephens. Complaint ¶¶ 15–17, 44–45, 48, 51, 57, 60–72, 78–92, 95–97; Plaintiffs'

Memorandum of Law In Opposition to Defendant's Motion to Dismiss ("Plain.Mem.") at 18–36.

The defendant's motion argues for relief under either Fed.R.Civ.P. 12(b)(6) or 9(b). On a motion to dismiss under Rule 12(b)(6), the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *see Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2d Cir.1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The motion to dismiss for failure to state a claim must be judged in accordance with the substantive law of civil suits based on violations of § 10(b) and Rule 10b–5.

Except in certain circumstances, consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. *See Cortec Industries, Inc. v. Sum Holdings, L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). On a motion to dismiss, a district court must accept plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986), and the allegations must be "construed favorably to the plaintiff." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). "[A] Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the

remainder." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982).

The consideration of a Rule 12(b)(6) motion involves the interpretation of the general command of Rule 8(a) that a complaint contain a "short and plain statement of the claim." However, the Court must harmonize Rule 8(a) with the Rule 9(b) requirement that fraud be pled with "particularity." Before analyzing the complaint, it is useful to review pertinent Second Circuit authority on Rule 9(b).

■ Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "Rule 9(b), however, must be read together with Rule 8(a) which requires only a 'short and plain statement' of the claims for relief." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). But Rule 9(b) must be enforced so as to accomplish its three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of his defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits. *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991).

■ To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 45 (2d Cir. 1991); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *See DiVittorio*, 822 F.2d at 1247.

■ However, no specific connection between fraudulent representations or omissions need be pleaded as to defendants who are insiders or affiliates personally participating in the statements at issue. *See DiVittorio*, 822 F.2d at 1247 (offering memorandum); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986) (same). While this requirement allows more latitude when pleading fraud against insiders or affiliates, it does not excuse a complete failure to specify when, where and how fraud took place. While *DiVittorio* specifically states at 1247 that "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations" (*citing Luce*, 802 F.2d at 54), *DiVittorio* goes on to quote *Luce* for the proposition that where an offering memorandum is involved, insider or affiliate defendants do not have to be tied to specific misrepresentations. *Id.*

■ A complaint may adequately identify the statements alleged to be misrepresentations and properly indicate when, where and by whom they were made, yet still fail Rule 9(b) scrutiny if the complaint does not allege circumstances giving rise to a strong inference that defendant knew the statements to be false, *Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990), and intended to defraud plaintiff. *Ouaknine*, 897 F.2d at 80; *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Knowledge is a state of mind. So is intent to defraud, or "scienter." While Rule 9(b) permits conditions of mind to be averred generally, the rule also requires that allegations of scienter be supported by facts giving rise to a "strong inference" of fraudulent intent. *Ouaknine*, 897 F.2d at 80; *Kramer*, 937 F.2d at 776; *Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 143–44 (2d Cir.1991).

Allegations supporting an inference of fraudulent intent frequently include defendant's statement that a fact exists or an event will come to pass coupled with allegations that the fact did not exist or the event did not occur, and circumstances indicating

that the statement was false when made. *See, e.g., Luce,* 802 F.2d at 56 (alleged misrepresentation in offering memorandum that general partners would make an initial capital contribution of $385,000 and guarantee a $4.5 million construction loan accompanied by allegations that general partners contributed only $80,000 and did not guarantee the loan); *DiVittorio,* 822 F.2d at 1248 (offering memorandum's statement that proceeds of offering would be expended as quickly as possible accompanied by allegation that proceeds were never so applied, and estimate that property contained approximately 9,260,000 tons of coal accompanied by allegation that mines did not contain nearly that much). *See Ouaknine,* 897 F.2d at 81, for a comparable analysis.

To satisfy the scienter requirement, a plaintiff need not allege facts which show a defendant had a motive for committing fraud, so long as plaintiff adequately identifies circumstances indicating "conscious behavior" by the defendant from which an intent to defraud may fairly be inferred. *Cosmas,* 886 F.2d at 13. However, where a particular defendant's motive to defraud is not apparent, the strength of the circumstantial allegations must be correspondingly greater. *Beck,* 820 F.2d at 50.

The defendant's status and function are important factors. For example, an outside director's liability, if any, must be that of an aider and abettor, a conspirator, or a substantial participant in fraud perpetrated by others; and conclusory allegations of aiding and abetting or conspiracy are not enough. *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d at 119. Where third-party advisers are concerned, the complaint must allege circumstances allowing a strong inference of knowledge of liability. *Devaney v. A. P. Chester,* 813 F.2d 566, 568 (2d Cir.1987) (investment banker).

Allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge. *Luce,* 802 F.2d at 54 n. 1; *DiVittorio,* 822 F.2d at 1247–48. However, that exception to Rule 9(b)'s general requirement of particularized pleading does not constitute a license to base claims of fraud on speculation or conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy a relaxed pleading standard. *Wexner,* 902 F.2d at 172.

### A. Rule 10b–5 and Fraud Claims

Plaintiffs' Count I alleges (on information and belief as to defendant's acts) that defendant violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. To successfully maintain "a claim under this section, plaintiffs 'must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security.'" *McMahan & Co. v. Wherehouse Entertainment, Inc.,* 900 F.2d 576, 581 (2d Cir.1990) (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991).

The complaint must provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 102; *see Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979) (applying *Conley* standard to Rule 9(b) cases), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). It is sufficient if the Amended Complaint "adequately set forth a claim and gave the [defendants] fair notice of its basis." *See Conley,* 355 U.S. at 47, 78 S.Ct. at 102. "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail facts upon which he bases his claim." *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir.1971); *see Credit & Finance Corp. Ltd. v. Warner & Swasey Co.,* 638 F.2d 563, 566 (2d Cir.1981).

In the case at bar the complaint complies with the requirements of Rule 9(b). Plaintiffs have adequately alleged an extensive scheme of fraud by M & W and have alleged participation and aiding and abetting by Satterlee Stephens. Plaintiffs have provided a detailed outline of the fraud they allege was committed by M &

W. Complaint ¶¶ 22–72. Plaintiffs have detailed the alleged misrepresentations and omissions in the Registration Statement and Prospectus. Complaint ¶¶ 78–80. Plaintiffs go on to allege with great detail the alleged participation of Satterlee Stephens in the fraud and Satterlee Stephens' alleged aiding and abetting of M & W's fraud. Complaint ¶¶ 81–92. The allegations of the complaint more than adequately comply with the fraud pleading requirements of Rule 9(b) and give the defendant fair notice of plaintiffs' claims. *See Conley,* 355 U.S. at 47, 78 S.Ct. at 102.

Consequently, defendant's motion to dismiss the Rule 10b–5 and fraud claims is denied. Accordingly, the motion to dismiss the common law claims for lack of pendent jurisdiction is denied. As I have found that the complaint complies with Rule 9(b), the motion for a more definite statement is denied.

### B. Negligent Misrepresentation

Defendant moves to dismiss Count III for failure to state a claim. Plaintiffs have responded by stating that they intend to dismiss Count III and have not responded to defendant's motion on this point. Plain. Mem. at 3 n. 3. If this dismissal has not been accomplished, the Court dismisses Count III without prejudice.

### C. Malpractice

Defendant had moved to dismiss Count IV because the Settlement Agreement giving plaintiffs the rights to such a cause of action had not been approved. Plaintiffs note that the settlement has been approved and argue that this motion is moot. Plain. Mem. at 3 n. 3. Defendant persists in its motion to dismiss because it argues that plaintiffs have failed to plead compliance with the applicable statute of limitations. In addition, defendant asks for a more definite statement of what specific actions constituted malpractice.

Defendant relies on *Eriksson v. Galvin,* 484 F.Supp. 1108, 1118 (S.D.N.Y.1980) for the proposition that plaintiffs must affirmatively plead compliance with the statute of limitations. 1 find that case inapposite because in *Eriksson,* there had been a full trial on the merits. *See Eriksson,* 484 F.Supp. at 1118. As defendant has cited no cases establishing an affirmative duty to plead compliance with the statute of limitations at this stage of the case, I decline to hold that there is such a duty. I deny the motion to dismiss for failure to plead compliance with the statute of limitations.[2] Plaintiffs are not required to file a more definite statement concerning compliance with the statute of limitations.

### III. Motion to Strike

■ Satterlee Stephens moves pursuant to Fed.R.Civ.P. 12(f) to strike allegations in the complaint about events that took place after the date of the Offering. Satterlee Stephens argues that allegations concerning events after the Offering, primarily investigations of M & W and others, are irrelevant to a suit concerning securities fraud in connection with the Offering. Satterlee Stephens contends that allegations that Satterlee Stephens prepared offering materials that failed to predict future events are not actionable because such omissions are not material under the test of materiality in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Def.Mem. at 43–53.

Plaintiffs respond that events occurring after the Offering may be relevant to materiality, defendants' knowledge, motive, plan or constitute admissions. *See Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 573 (2d Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). Plaintiffs contend that the allegations are not predictive. Plaintiffs argue that even if the allegations are predictive, they should not be stricken from the complaint because

---

**2.** In any event, at this stage the Court does not have sufficient information to determine the statute of limitations question on the malpractice claim. Defendant is free to move for summary judgment on statute of limitations grounds when more evidence is available. *See Gross v. Diversified Mtg. Investors,* 438 F.Supp. 190, 198 (S.D.N.Y.1977), *aff'd without op.,* 636 F.2d 1201 (2d Cir.1980).

they may have a relation to the case. Plain.Mem. at 56–65.

Fed.R.Civ.P. 12(f) provides that the district court "upon motion made by a party ... may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." As this Court has held, "motions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter.'" *von Bulow By Auersperg v. von Bulow*, 657 F.Supp. 1134, 1146 (S.D.N.Y.1987) (citing and quoting *Schramm v. Krischell*, 84 F.R.D. 294, 298 (D.Conn.1979)); *see also Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529 (S.D.N.Y.1985). "On a Rule 12(f) motion to strike, 'it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.'" *United States v. District Council*, 778 F.Supp. 738, 764 (S.D.N.Y.1991) (citing and quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

The allegations concerning events after the Offering will not be stricken. Such allegations are relevant to issue such as the statute of limitations question and other questions. The allegations as to alleged omissions will not be stricken as being merely predictive. The question as to whether alleged omissions were predictive cannot be determined on the basis of conclusory allegations by defendant. *See McCoy v. Goldberg*, 748 F.Supp. 146, 151 (S.D.N.Y.1990). Determination of whether the alleged omissions were material must wait for the development of further proof.

### IV. Consolidation

By Order dated October 19, 1987 in *In re Matthews & Wright*, the Court directed that future related cases are to be consolidated with *In re Matthews & Wright* unless opposed.

Defendant Satterlee Stephens opposes consolidation on the grounds that this case concerns a different cause of action and concerns different parties and different facts. Defendant argues that the only common cause of action is § 10(b) and that that claim is not asserted against the nonsettling defendant in *In re Matthews & Wright*, DLJ. Defendant contends that while the main case concerns the activities of M & W and various brokerages, this case concerns a law firm that was not an insider to the bond transactions. Defendant argues that the allegations in the main case primarily concern the bond transactions while this case concerns the alleged fraudulent offering of stock. Defendant's Memorandum of Law In Support of Its Opposition to Consolidation ("Def. Con.Mem.") at 4–8.

Defendant argues that the cases are at different stages and that the prejudice that would result from consolidation would outweigh any benefit in judicial economy. Defendant contends that since *In re Matthews & Wright* is an older case that has partially settled, this newer case should not be grouped with it. Defendant argues that it would be prejudiced by consolidation because Satterlee Stephens' narrow role in M & W's affairs would be grouped with the wider fraud alleged against M & W. Defendant predicts that this consolidation would be confusing to a jury or to the Court during a trial. Defendant argues that any gains in judicial economy by consolidation will be outweighed by the prejudice of forcing Satterlee Stephens to participate in the extensive discovery of the main case. In any event, defendant suggests waiting for further development of the facts before deciding on consolidation. Def.Con.Mem. at 8–13.

Plaintiffs respond that the main issue in both *In re Matthews & Wright* and this case is whether the registration statement and prospectus were false and misleading under § 10(b) and Rule 10b–5. Plaintiffs argue that Satterlee Stephens is alleged to have a substantial role in the transactions referred to in both complaints. As such, plaintiffs contend that there are numerous common questions of law and fact in the two cases. Plaintiffs note that the different postures of the two cases do not prevent consolidation as discovery will be going ahead with respect to DLJ and Satter-

lee Stephens can be integrated into the discovery in the other case without much delay. Plaintiffs point out that Satterlee Stephens is already subject to discovery in the other case. *See* Affidavit of Neil L. Selinger, Esq. dated October 19, 1989, Exh. 3. Plaintiffs reject defendant's predictions of prejudice as too speculative and note that defendant can apply for a severance at time of trial. Plaintiffs' Memorandum of Law In Response to Defendant's Opposition to Consolidation at 6–14.

Fed.R.Civ.P. 42(a) provides as follows: When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary cost or delay.

 "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284–85 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990); *see Bank of Montreal v. Eagle Associates,* 117 F.R.D. 530, 532 (S.D.N.Y.1987) (citations omitted). "[I]t is the court's decision whether the common questions of law and fact indicate that sufficient judicial economy would be achieved by consolidation when balanced against any inconvenience, delay, or expense caused the parties by attending trial of some issues not shared by all." *Vaccaro v. Moore-McCormack Lines, Inc.,* 64 F.R.D. 395, 397 (S.D.N.Y.1974); *see Spirt v. Teacher Ins. and Annuity Assoc.,* 93 F.R.D. 627, 638–39 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds,* 691 F.2d 1054 (2d Cir. 1982), *vacated,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). When there are no common issues of law and fact, consolidation is inappropriate. *Ropfogel v. Wise,* 112 F.R.D. 414, 416 (S.D.N.Y.1986); *Flintkote Co. v. Allis-Chalmers Corp.,* 73 F.R.D. 463, 465 (S.D.N.Y.1977).

 In securities actions where the complaints are based on the same "public statements and reports" consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced. *Lloyd v. Industrial Bio-Test Laboratories, Inc.,* 454 F.Supp. 807, 812 (S.D.N.Y.1978); *see Waldman v. Electrospace Corp.,* 68 F.R.D. 281, 284 (S.D.N.Y.1975). Where a law firm was only alleged to have participated in a few transactions, and only in the period after the principal wrongdoing, the Second Circuit held that the complaint against the firm should not be consolidated with a class action against other defendants. *See Garber v. Randell,* 477 F.2d 711, 717 (2d Cir. 1973). However, "each case in which it may appear desirable to consolidate complaints in different actions must be evaluated on its own facts with close attention to whether the anticipated benefits of a consolidated complaint outweigh potential prejudice to the parties." *Katz v. Realty Equities Corporation,* 521 F.2d 1354, 1360 (2d Cir.1975); *see Quintel Corp., N.V. v. Citibank, N.A.,* 100 F.R.D. 695, 697–98 (S.D.N.Y.1983); *Tucker v. Arthur Andersen & Co.,* 73 F.R.D. 316, 317 (S.D.N.Y. 1976).

 There are numerous common issues of law and fact between this case and *In re Matthews & Wright.* As defendant acknowledges, both cases allege violations of § 10(b) and Rule 10b–5 in connection with the offering of M & W common stock. The fact that there are different parties in this action does not mean this case should not be consolidated. *See Waldman,* 68 F.R.D. at 284. While defendant is correct in noting that in *Garber* a law firm was able to resist consolidation when it played a minor role in the transaction, plaintiffs' allegations in the case at bar put Satterlee Stephens in a different position. *See Id.* at 284 n. 5. Defendant's argument that the facts of the two cases are different does not prevent consolidation. While there will be some facts in the original case that do not apply to defendant here and some facts that do not apply to the parties in *In re Matthews & Wright* (two of whom, the plaintiffs here, are the same), there are numerous areas where the facts of the two cases overlap.

The fact that the cases may be in different stages does not bar consolidation. The discovery deadline in *In re Matthews & Wright* is presently October 30, 1992. Discovery in that case is certainly applicable to discovery in this case, in fact defendant has been served with discovery requests in that case. If additional discovery is needed in this case, the parties should be able to accomplish it without undue delay. *See Lloyd*, 454 F.Supp. at 812. I cannot agree with defendant that consolidation should be delayed until the completion of further discovery. *See Lerman v. Chuckleberry Pub., Inc.*, 544 F.Supp. 966, 970 (S.D.N.Y. 1982), *rev'd on other grounds*, 745 F.2d 123 (2d Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985).

Defendant's arguments concerning prejudice do not prevent consolidation. Just because the claims against Satterlee Stephens will be tried along with the claims against the remaining defendants in *In re Matthews & Wright* does not mean Satterlee Stephens will not get a fair trial. Consolidation does not deprive a party of rights or defenses it had before consolidation. *Cole v. Schenley Industries, Inc.*, 563 F.2d 35, 38 (2d Cir.1977). The Court's decision granting consolidation does not impair defendant's ability to later move for a severance. *See Katz*, 521 F.2d at 1362.

As consolidation is in the interests of judicial economy and undue prejudice will not result, this case is consolidated with *In re Matthews & Wright.*

### V. Class Certification

Plaintiff now moves for class certification under Fed.R.Civ.P. 23. The proposed class is all persons who purchased M & W common stock during the period August 14, 1986 through June 26, 1987, excluding purchasers connected to Satterlee Stephens or the defendants in *In re Matthews & Wright.* These plaintiffs have been certified as class representatives in *In re Matthews & Wright* on consent and pursuant to the Court's Order dated February 11, 1988.

Plaintiffs contend the class is so numerous that joinder could not be accomplished.

Plaintiffs note that 1,500,000 shares of M & W stock were sold in the August 14, 1986 offering and shares changed hands after that in the aftermarket. Plaintiffs argue that since the alleged fraud involves the nondisclosure of material information in the registration statement and prospectus prepared by Satterlee Stephens there are common questions of law and fact across the class. Plaintiffs contend that their claims are typical of others in the class because all class members will be alleging losses because of misrepresentations and omissions made by Satterlee Stephens. Plaintiffs argue that they will adequately represent the class because they have retained an experienced firm and plaintiffs have obtained favorable results for the class in *In re Matthews & Wright.* Plaintiffs argue that the common questions of law and fact in this case predominate and make class action the best means for adjudicating this case. Plaintiffs' Memorandum of Law In Support of Class Action Certification at 12–20.

Defendant resists class certification. Defendant argues that plaintiffs are not typical of other plaintiffs and will not fairly and adequately protect the interests of the parties. Defendant contends that the plaintiffs' claims are so individualized that common questions of law and facts do not predominate. Defendant concludes that class action would not be a better method to resolve this case. Satterlee Stephens' Memorandum of Law In Opposition to Plaintiffs' Motion for Class Certification (Def.Class Mem.") at 16–38.

Fed.R.Civ.P. 23(a) provides:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

A proposed class action must meet the requirements of Rule 23(a) and at least one

of the prongs of Rule 23(b). Plaintiffs seek certification under Fed.R.Civ.P. 23(b)(3), which provides that a class action is appropriate when:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As plaintiffs are seeking class certification they bear the burden of persuasion on all disputed issues regarding certification. *See Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 600 (S.D.N.Y.1982). Class certification is discretionary. A district court determining class certification should consider each of the factors listed in Rule 23(a) and then decide whether the requirements of Rule 23(b) have been met. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir.1992).

Defendant appears to concede that the first two prongs of Rule 23(a) have been met but attacks the typicality of the plaintiffs and their adequacy in representing the class. I have no difficulty concluding that the requirements of numerosity and common questions have been met, *see, e.g., Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 649–50 (S.D.N.Y.1986), and turn to the questions of typicality and adequacy.

*A. Typicality*

Defendant argues that the plaintiffs are not typical of the proposed class because the plaintiffs relied on their brokers as opposed to alleged misrepresentation, omission or market price. Defendant contends that since the plaintiffs will be subject to a defense that they did not rely on defendant's statements, their claims are not typical of other purchasers. Defendant notes that Oberkircher did not purchase shares in the initial public offering ("IPO") but rather purchased in the secondary market after significant public disclosures about M & W's difficulties. Although conceding that Werner purchased in the IPO, defendant notes that Werner made a profit selling his shares. In addition, defendant contends, Werner made later purchases in the secondary market in reliance on his broker. Defendant also argues that both plaintiffs will have difficulty establishing that they were injured by the alleged fraud in the IPO. Def.Class.Mem. at 19–25.

Plaintiffs argue that Werner testified that he relied on the market price as well as information conveyed by his broker Gelman. Plaintiffs contend that Werner did not receive any non-public information from his broker, *see, e.g., Landry v. Price Waterhouse*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989), but rather his broker simply conveyed information available to the public. *See Greene v. Emersons Ltd.*, 86 F.R.D. 47, 60 (S.D.N.Y.1980), *aff'd sub. nom. Kenneth Laventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29 (2d Cir.1984). Plaintiffs state that Werner actually lost money. Plaintiffs argue that Oberkircher is a typical class representative even though his broker made the investment decision. Plaintiffs contend that such reliance on a "third party" is not fatal to class representation when the third party is relying on the fraudulent material distributed by defendant and the consequent misleading market price. *See Gary Plastic Packaging Corp. v. Merrill Lynch*, 119 F.R.D. 344, 347–48 (S.D.N.Y.1988), *aff'd*, 903 F.2d 176 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991).

Plaintiffs argue that they should benefit from the presumption of reliance in Rule 10b–5 cases, *see Basic Inc. v. Levinson*, 485 U.S. at 241–47, 108 S.Ct. at 988–92, and contend that the defendant has not rebutted the presumption. Plaintiffs note that their purchases were partially based on the market price and argue that even if information was conveyed by the plaintiffs' brokers that does not change reliance if the brokers were misled. Plaintiffs reject defendant's challenge to Oberkircher that he purchased stock on the secondary markets after "negative news." Plaintiffs contend that district courts are not to decide the merits of a plaintiff's claim when determining class certification. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94

S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). Plaintiffs reject the contention that they have not alleged defendant proximately caused their injuries because both plaintiffs purchased stock after the IPO and Werner purchased shares in the IPO. Plaintiffs note that both class representative purchased during the Class Period and that there is no reason someone who purchased shares after the IPO cannot represent someone who purchased in the IPO. Plaintiffs' Reply Memorandum In Support of Motion for Class Certification ("Plain. Class. Reply Mem.") at 10–20.

■■■ The requirement of typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel*, 960 F.2d at 291 (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968), *vacated on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)) (citation omitted). Where a potential class representative is subject to unique defenses, that plaintiff is not typical of the class. *See Gary Plastic*, 119 F.R.D. at 348–49.

■■■ Plaintiffs have carried the burden of demonstrating that their claims are typical of the proposed class. Each class member's claim arises from the same course of events, namely the alleged fraud at M & W. Each class member will be making similar legal arguments, namely that defendant is liable under Rule 10b–5 and state law. The fact that Werner and Oberkircher may have received some information from brokers does not make them atypical. "[W]here 'a single written document is alleged to be materially false and misleading, the common questions predominate over those affecting only individual class members.'" *Gary Plastic*, 119 F.R.D. at 347–48 (citation omitted); *see Greene v. Emersons Ltd.*, 86 F.R.D. at 60 (broker merely relaying public information).

Defendant's argument that Oberkircher is not typical because he purchased in the "secondary" market is unavailing. Plaintiffs purchased in a market tainted by the allegedly fraudulent prospectus and registration statement. "Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations ... may be presumed." *Basic Inc.*, 485 U.S. at 247, 108 S.Ct. at 991; *see* Louis Loss, *Fundamentals of Securities Regulation* 955–65 (2d ed. 1988). The fact that these misrepresentations affected the price of the shares, if proven, will be true whether a class member bought his shares at the time of the IPO or later in the Class Period.

As I find the plaintiffs are typical of the class, I reject lack of typicality as a grounds for not certifying the class.

### B. Adequacy of Representation

Defendant appears to concede that plaintiffs' counsel is adequate but attacks the adequacy of representation plaintiffs will provide the class. Defendant argues that the plaintiffs have interests that are antagonistic to the other members of the class because Oberkircher did not purchase during the IPO and Werner made money on one of his purchases during the IPO. Defendant contends the fraud on the market theory cannot be used in this case because there was no well-developed market for the shares at the time of the IPO. Defendant argues that the issue of reliance on brokers makes plaintiffs inadequate representatives. Defendant also contends that Oberkircher cannot represent the class because his claim is time-barred. Def.Class.Mem. at 25–32.

Plaintiffs respond that they are not subject to unique defenses. Plaintiffs note that even if the IPO is not subject to the fraud on the market theory, that would only limit the class to those who purchased after the IPO. Even if the fraud on the market theory does not apply to the class members who purchased during the IPO, plaintiffs argue, the presumption of reliance on material misrepresentation is sufficient for the IPO. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Plaintiffs contend that the fraud on the market theory is applicable to an IPO because an investor relies on the integrity of

the initial offering process. In addition, plaintiffs urge the adoption of the "fraud created the market" theory to cover the IPO. Plaintiffs repeat that defendant's objections to the class are premature at this stage of the case. Plaintiffs reject the statute of limitations argument, as the Court has done above. Plain. Class Reply Mem. at 20–28.

"Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel*, 960 F.2d at 291 (citing and quoting *Eisen*, 391 F.2d at 562). As defendant does not dispute the qualifications of plaintiffs' counsel, the question is whether plaintiffs have interests that are antagonistic to the rest of the class.

The Court has already rejected the argument that the role of brokers in this case makes these plaintiffs inadequate representatives. As the Court has also rejected the statute of limitations defense as it concerns Oberkircher, that is not a ground to disqualify Oberkircher as a class representative.

■■■ The remaining question is whether the timing of plaintiffs' purchases disqualifies them from representing the class. Werner purchased 2,000 shares in the IPO and subsequently sold them at a loss. Werner purchased 4,000 shares in March 1987 and sold 2,000 of those shares in August 1987. Transcript of Deposition of Fred Werner on November 16, 1989 at 29, 46–48, 49, 67. Oberkircher purchased shares on or about May 15, 1987. Transcript of Deposition of Paul Oberkircher dated November 14, 1989 at 23.

Defendant attempts to disqualify plaintiffs because of the timing of their purchases. Defendant's argument that Oberkircher cannot represent the class because he did not purchase shares during the IPO is unpersuasive. There are undoubtedly numerous members of the class who purchased shares in the IPO and many who purchased after the IPO. Oberkircher ob-

viously represents the latter group and is not antagonistic to the former. Werner purchased in the IPO and after so he can obviously represent both groups. Werner testified to a loss from his IPO purchaser so even if he made a profit on some of his IPO shares his interest is not antagonistic to the class. The timing of their purchase do not disqualify the plaintiffs as class representatives. "[W]hile differing interests among class members may ultimately surface, the greater weight of recent authority militates against denying class certification on that ground." *Greene v. Emersons Ltd.*, 86 F.R.D. at 61.

As to what theory of Rule 10b–5 liability will be applicable to which claims, the plaintiffs are not antagonistic to the class members. Defendant's argument that the fraud on the market theory is not applicable to the IPO is unavailing. Those who purchased in the IPO were the alleged direct victims who are entitled to a presumption of having been misled by the offering documents. *See Affiliated Ute Citizens*, 406 U.S. at 153–54, 92 S.Ct. at 1472; *duPont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987); Loss, *Fundamentals* 959–60. In any event, I agree with plaintiffs that defendant's arguments against class certification seek a premature determination of the merits of plaintiffs' claims. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152. If any real differences were to emerge between the claims of those class members who purchased in the IPO and those who purchased later, the Court could use its discretion and divide the class into subclasses.

I find that plaintiffs will be adequate representatives of the class and refuse to disqualify plaintiffs as class representatives.

## C. Rule 23(b)(3)

■■■ Defendant's final challenge to class certification is to argue that common questions of law and fact do not predominate over issues affecting individual class members. Defendant argues that the pendent state law claims in Counts II and IV are unique and mean that common questions of law and fact do not predominate. Defendant contends that class certification

is inappropriate because the Court would have to apply the laws of all the states where plaintiffs reside. Defendant again argues that the fact that part of this case concerns the IPO means that plaintiffs will be subject to individualized questions of reliance. Defendant presses its contention that the individual questions applicable to plaintiffs, the antagonism of plaintiffs to the class and the plaintiffs' state law claims all make this case an inappropriate candidate for class action. Def.Class Mem. at 33–38.

Plaintiffs respond that there is no difficulty with applying the fraud on the market theory to common law fraud. Plaintiffs contend that a class can be certified even where there are plaintiffs from many states and, if necessary, the class can be divided into subclasses. Plaintiffs repeat that individualized questions of reliance do not predominate. Plaintiffs reject defendant's arguments that class treatment is inappropriate and note that they successfully prosecuted the class action in *In re Matthews & Wright.* Plain. Class Reply Mem. at 29–31.

Under the second sentence of Rule 23(b)(3) the Court, in determining whether common questions predominate and whether class action is a superior method of adjudication, should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As the Second Circuit has held, "[i]f a class action is markedly superior to all the alternatives, then, at least at the early stages of the litigation, we should construe broadly the other elements of Rule 23, to permit the efficient enforcement of 10b–5 through class actions with appropriate safeguards." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.), *cert. denied,* 395 U.S. 977, 89 S.Ct.

2131, 23 L.Ed.2d 766 (1968); *see In re Am Intern., Inc. Securities Litigation,* 108 F.R.D. 190, 198 (S.D.N.Y.1985).

■ The common questions of law and fact in this case predominate over individual questions. The issue of the fraud on the market theory in the New York courts is open, *see Minpeco, S.A. v. Hunt,* 718 F.Supp. 168, 175–76 (S.D.N.Y.1989), but that is no reason to deny class certification. Class certification of pendent state law claims is appropriate where plaintiffs' "state law claims are predicated upon the same fraudulent acts and material misrepresentations and omissions that underlie their federal claims." *In re Energy Systems Equip. Leasing Sec. Litigation,* 642 F.Supp. 718, 753 (E.D.N.Y.1986). The fact that plaintiffs reside in numerous states does not mean that class action is not the superior method for proceeding with this case. *See Bresson v. Thomson McKinnon Securities,* 118 F.R.D. 339, 343–44 (S.D.N.Y.1988); *In re Lilco Securities Litigation,* 111 F.R.D. 663, 669–70 (E.D.N.Y. 1986). As common questions predominate over any individual questions, the last question is whether class action is a superior method of adjudication in this case.

In this wide ranging securities action with thousands of potential class members, class action is the superior method for adjudicating the case. The other litigation surrounding the failure of M & W is already before this Court as a class action and this case can proceed on the same course. For the same reason, this forum is particularly well-suited for this case. As far as manageability, this question overlaps with the question of common issues, and I have already concluded that this action will be manageable despite the large number of plaintiffs from different states. Courts have noted the superiority of class action litigation in federal securities actions, *see, e.g., Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 505–06 (S.D.N.Y.1984), and that superiority exists in this case.

As I have found that plaintiffs have met all of the requirements of Rule 23(a) and

Rule 23(b)(3), plaintiff's motion for class certification is granted.

## ORDER

Defendant's motion to dismiss is denied in its entirety. Plaintiffs' motion for summary judgment dismissing defendant's statute of limitations defense is granted. Defendant's motion to strike material from the complaint is denied. Defendant's motion opposing consolidation with *In re Matthews & Wright* is denied. Plaintiff's motion for class certification is granted.

Counsel for the parties are directed to attend a status conference at 2:00 p.m. on September 25, 1992 in Room 307 of the United States Courthouse.